**FORD MOTOR COMPANY, Appellant,**

v.

**K. E. TIDWELL, Appellee.**

No. 6658.

Court of Civil Appeals of Texas,
El Paso.

Feb. 22, 1978.

Appellee's Motion for Rehearing Denied
and Appellant's Rehearing Denied
March 22, 1978.

Appellee's 2nd Motion for Rehearing
Denied April 12, 1978.

Stubbeman, McRae, Sealy, Laughlin & Browder, Rodney W. Satterwhite, David K. Brooks, Midland, for appellant.

Dan D. Sullivan, Andrews, Shafer, Gilliland, Davis, Bunton & McCollum, Inc., Stephen L. Brannan, Odessa, for appellee.

## OPINION

WARD, Justice.

This case is presented on appeal as one involving the breach of an implied warranty in the sale of a new Ford automobile. Trial was to a jury, which determined that the car was not fit for the ordinary purposes for which automobiles are used, and which then fixed the amount of damages and attorney's fees incurred. Based upon the verdict, the trial Court entered judgment for the Plaintiff against the car manufacturer, Ford, for triple damages and attorney's fees as provided by Section 17.50, Tex.Bus. & Comm.Code. A take nothing judgment was entered in favor of the car dealer, which had also been joined as Party-Defendant. The manufacturer, Ford, appeals and we reverse and remand.

K. E. Tidwell sued Carl Sewell Motor Company, as the dealer, and Ford Motor Company, as the manufacturer of a 1973 station wagon, which he purchased on September 17, 1973, alleging a breach of the express written warranty given by Ford to the Plaintiff on the purchase of the automobile, a breach of the express verbal warranty given by Sewell that it would fully service and repair any defects in the automobile, and a breach of the implied warranties of fitness and merchantability "that said automobile would be adequate and sufficient for the purposes for which it was manufactured." Ford answered, alleging that the only warranties involved were express warranties which it denied it had breached. Upon trial, the two Defendants' testimony was to the effect that they jointly furnished a written warranty to the Plaintiff which provided that for a period of twelve months or 12,000 miles, whichever occurred first, the selling dealer would repair or replace free of charge any part found to be defective. This written warranty provided that it was in place of all other warranties, express or implied, including any implied warranty of merchantability or fitness. Somewhat surprising in the face of his own pleadings, but not so in the face of this testimony, the Plaintiff then denied that he had ever had a written warranty, and relied, instead, only upon the implied warranty of merchantability, Tex. Bus. & Comm.Code Sec. 2.314, claiming the damages for a breach of such an implied warranty under Secs. 17.50(a)(2) and 17.-50(b)(1), Tex.Bus. & Comm.Code. As indi-

cated previously, the jury accepted the Plaintiff's version and first found that the warranty booklet for the automobile was not delivered to the Plaintiff at the time of the purchase, and then found in favor of the Plaintiff's theory of breach of implied warranty of merchantability.

■ Ford Motor's first point on appeal is to the effect that there was no basis of liability against it, as there was no privity of contract between it and the Plaintiff. The point was written before the decision was made in *Nobility Homes of Texas, Inc. v. Shivers,* 557 S.W.2d 77 (Tex.1977). The point is overruled as that case decided that a manufacturer can be responsible, without regard to privity, for the economic loss which results from its breach of the Uniform Commercial Code's implied warranty of merchantability.

■ Ford Motor's second point is to the effect that the trial Court erred in its submission of Special Issue No. B regarding the Plaintiff's theory of breach of implied warranty of merchantability, and that the issue did not inquire as to the unfitness of the automobile at any particular time. No proof was offered that the implied warranty was of any continuing nature or for any fixed period of time. Under such circumstances, any such implied warranty relates to the time of sale and does not cover future defects not in existence at such time or inherent in the article sold. *Kriedler v. Pontiac Division of General Motors Corporation,* 514 S.W.2d 174 (Tex.Civ.App.—Texarkana 1974, writ ref'd n. r. e.). While that proposition of law as to implied warranty is settled, Ford's complaint is that Plaintiff's Special Issue No. B failed to set the specific time of sale as the subject of the inquiry. However, we do not find that Ford Motor ever called the defect to the trial Court's attention. Tex.R.Civ.P. 272, 274. Ford Motor Company did object to Special Issue No. B on the ground that it was "an incomplete submission of a theory of recovery on the basis of any breach of implied warranty of fitness for an ordinary purpose." Such an objection was too general, as it nowhere appraised the trial Court that Ford Motor

was complaining that the inquiry as to unfitness of the automobile be limited to September 17, 1973, the date of the sale. The trial Court committed no error in overruling that objection. Tex.R.Civ.P. 274; 3 McDonald, Texas Civil Practice, Secs. 12.29.1, 12.29.3.

■ Appellant next points to paragraph 9 of its Objections to Court's Charge as a basis for preservation of its claimed error. This objection is to the effect that:

"The Defendants object to the Charge of the Court as a whole for the reason that said Charge does not submit an issue or inquire into whether or not the Ford Stationwagon was reasonably free of material defects and workmanship on the day it was sold to Plaintiff."

As we interpret this objection, it is in no way related to the issue submitted on the breach of the implied warranty of fitness, but is an objection relating to the charge which did submit a series of issues on the Appellant Ford's defensive theory that it had given an express written warranty in connection with the sale. In that regard, Special Issue No. 1 inquired from a preponderance of the evidence if the 1973 Ford was "not free of defects in material and workmanship upon the date it was sold to Plaintiff." This issue, as written, fully complied with Ford's Objection No. 9, and Appellant Ford cannot now be heard to state that Objection No. 9 was meant to complain of Special Issue No. B, which submitted the wholly separate theory of implied warranty of merchantability. Though that issue on implied warranty did not inquire as to the unfitness of the automobile at any particular time, that complaint was waived and the second point is overruled. Tex.R.Civ.P. 274.

After the purchase of the car on September 17, 1973, the Plaintiff experienced trouble with the horn, which malfunctioned and blew when he was not in the car; he had trouble with the weather stripping around the windows; the cruise control would go off when other electrical equipment was activated; and a defect was noted in the rear electric window lift. The Plaintiff also

noted that something was wrong with the front end as it made a noise and a click when the car was turned to the left. The Plaintiff returned the car to the dealer for repairs of these defects on November 6, 1973, after the car had been driven some 1,194 miles, and, according to the Plaintiff, the horn and the weather stripping were fixed, though he continued to notice window noises when he drove at highway speeds. The cruise control was fixed, but the control for the rear electric window was never repaired. As to the front end, the dealer's testimony was that at that time the steering gear was removed, all internal parts of the steering mechanism were cleaned, and it was reassembled and installed with new seals. The Plaintiff testified that the clicking noise in the front end was repaired, but that he had to return the car to the dealer again on December 7th after the car had been driven some 2,289 miles. The main complaint at that time was that he was observing a problem with right turns, that is, after making a right turn, it was hard to recover or to straighten out again. Thereafter, on the next three or four occasions that he brought the car in for repairs, his serious complaint was of this defect in making his right turns; that he was experiencing this turning difficulty on approximately half of his turns; and that it was dangerous as it resulted in his wife running off of the road or running into the curb on several occasions. Of most importance as to this turning defect was that he was clear in his statement that it was only after the dealer had worked on the steering gear on November 6th that he first noticed this dangerous problem. Although the car was returned to the dealer three or four other times, and although the dealer at one time installed a complete new steering gear assembly, this defect was never corrected and the dangerous condition in the car continued. Because of this, the Plaintiff stored the car in May, 1974, after driving it some 7,000 miles.

In testifying as to his damages, the Plaintiff stated that in his opinion the car was worth only $1,000.00, and a reading of all of his testimony was that he was making this valuation based upon all of the defects which occurred or developed during the nine months that he drove the car. Further, a fair reading of the testimony is that, of the defects which made the automobile unfit for the ordinary purpose for which it was to be used, the main one was the dangerous condition connected with the steering which did not appear until after the mechanism was worked on by the dealer on November 6th. This is of importance because the Plaintiff and his wife were the only ones that established their complaints, and both readily admitted that they had no mechanical experience. There was no testimony offered as to what caused the serious turning defect.

Because the Plaintiff relied only on the theory of implied warranty, he had the burden of proving that the article was defective at the time it left the hands of the manufacturer or seller. At the same time, he did not have to produce direct or opinion evidence of the defect and when it came into existence, but could rely on circumstantial evidence. *Barnett v. Ford Motor Co.*, 463 S.W.2d 33 (Tex.Civ.App.—Waco 1970, no writ). In this case, the Plaintiff did produce evidence that some of the defects did exist at the time that he bought the automobile. However, as to the main item, the dangerous turning defect, the evidence is not sufficient too negate the possibility that an intermediate act or agency produced that turning defect; that is, that the evidence is not sufficient to negate the possible misrepair or maltreatment of the turning mechanism by the dealer. *Kriedler v. Pontiac Division of General Motors Corporation*, supra at 176.

Ford Motor Company presents "no evidence" points regarding the matters that we have just discussed. First, that there was no evidence that the vehicle was unfit at the time it left the manufacturer, and, second, that there was no evidence to support the jury finding that the value of the car in the condition in which it was sold and delivered to the Plaintiff was $3,800.00. Having considered only the evidence and inferences arising therefrom which support

the jury findings, the two "no evidence" points are overruled, as some defects were present which could have existed at the time of the sale and part of the valuation testimony did relate to those defects that then existed.

■ However, Ford Motor Company does have insufficient evidence points relating to those two matters. First, that the evidence was insufficient to support the finding of unfitness at the time of sale, and, second, that the evidence was insufficient to support the finding that the value of the automobile at the time of sale was $3,800.00. Having reviewed all of the evidence, and from what we have previously said, those two points are sustained.

■ We have duly considered Appellant's 7th and 8th points, and they are overruled as being without merit. We note that the 9th point concerns the admissibility of Defendants' offered testimony which would have been relevant to the issue of market value of the automobile at the time of the sale. Our opinion is that the testimony was admissible on the ground upon which it was offered, and neither the Parol Evidence Rule, nor the fact that it was contrary to the contractual price, was any bar to the offer. In the event that the offer is made again upon a retrial, the testimony should be admitted.

The judgment of the trial Court is reversed and the cause is remanded to the Court below for a retrial.

## ON MOTION FOR REHEARING

The Appellee has filed a motion for rehearing and we feel that three points made in the motion deserve further discussion. In the first place, the Appellee complains that the Appellant, in its motion for new trial, made no complaint that there was insufficient evidence to support the jury finding on Special Issue No. B that the vehicle was unfit, nor did it make any complaint that the finding was contrary to the overwhelming weight and preponderance of the evidence. We have examined the motion for new trial. The Appellee is correct

in his present assertion, and the Appellant failed to preserve that evidentiary point for the purposes of this appeal. Rules 374 and 418, Tex.R.Civ.P.; *Samford v. Duff*, 483 S.W.2d 517 at 526 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n. r. e.).

The Appellee also points out that the evidentiary point, made in the Appellant's brief regarding the finding that the valuation of the automobile at the time of sale was $3,800.00, was in terms that the jury finding was "contrary to the overwhelming weight and preponderance of the evidence," while the assignment of error in the motion for new trial which complained of that finding was couched in terms that there was "insufficient evidence to support that finding."

Lastly, the Appellee now complains that the two points which we did sustain were in terms of "contrary to the overwhelming weight and preponderance of the evidence," and we treated and discussed those points as being "insufficient evidence points."

■ We overrule the Appellee's motion for rehearing. As to the first complaint above discussed, we note that this is the first time that the defect has been pointed out. A similar late complaint was made in *Thomas v. Morrison*, 537 S.W.2d 274 (Tex. Civ.App.—El Paso 1976, writ ref'd n. r. e.). There, Justice Osborn pointed out that that appellee chose to do battle on the merits of the issue as it was presented in the appellant's brief, that he lost, and that on his motion for rehearing he claimed for the first time that there should have been no battle because the issue was not properly raised in the trial Court. In holding that the appellee was not entitled to a second bite of the apple, the rule was made that the objection concerning a proper assignment in the trial Court came too late, was waived, and the motion for rehearing was overruled. Not only does the complaint come too late, but Rule 374, Tex.R.Civ.P., has been repealed effective January 1, 1978, and the factual insufficiency complaint in a jury tried case may now be presented for the first time on appeal. See Rule 324, Tex.R.Civ.P. We merely note these

changes without determining their specific application to this case, which was submitted before the changes became effective.

As to the other matters raised by the Appellee in his motion for rehearing and pointed out above, we note that the assignment of error and the Appellant's point should have been stated in terms of "insufficient evidence," as the Appellant was complaining of a finding on a special issue on which it did not have the burden of proof. That the Appellant used the term "contrary to the overwhelming weight and preponderance of the evidence" matters not. The test is the same. This Court is required to examine the whole record, not only to determine whether there is some evidence to support the jury's finding to the special issue, but also to determine whether, considering all of the evidence, the finding is not manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 at 662 (1951). Since "insufficient" and "great weight" points invoke the same test of the evidence, a misuse of one for the other should not preclude a determination of the merits of a point of error. See O'Connor, "Appealing Jury Findings," 12 Hous.L.Rev. 65 at 77, 82 (1974). Since we have been directed to adopt a liberal rule with reference to the construction of points contained in Appellant's brief, and to pass on the merits of a point of error in the light of the statement and arguments thereunder, we properly treated the points which we discussed as "insufficient evidence" points and sustained them. See discussion in *O'Neil v. Mack Trucks, Inc.*, 542 S.W.2d 112 at 114 (Tex.1976).

For the reasons stated, we overrule the points in the Appellee's motion for rehearing which we have discussed. We have also considered the other points of error in the Appellee's motion for rehearing, and all of the points are overruled and the motion for rehearing is denied.