Clyde Wayne FITZGERALD, Appellant,

v.

CATERPILLAR TRACTOR COMPANY
and Towmotor Corporation, Appellees.

No. 2–84–135–CV.

Court of Appeals of Texas,
Fort Worth.

Jan. 10, 1985.

Denbow, Wells, Williford & Felber, and
Mike Felber, Fort Worth, for appellant.

Thompson & Knight, and Stephen C.
Schoettmer, Dallas, for appellees.

Before JORDAN, HUGHES, JOE SPUR-
LOCK, II, and HILL, JJ.

## OPINION

JORDAN, Justice.

Appellant sued Towmotor Corporation and Caterpillar Tractor Company, the manufacturer and seller of a Towmotor Model T50B forklift alleging an injury on August 3, 1977, when the blade of the forklift became disengaged from the carriage and fell on appellant's foot. The forklift in question was delivered to Ryder Truck Lines, Fitzgerald's employer on February 25, 1974. The suit was based only on alleged breach of the implied warranty of fitness. Appellees filed motion for summary judgment claiming that there was no fact issue raised regarding an implied warranty of fitness or merchantability and that any action Fitzgerald may have had was barred by the appropriate statute of limitations.

The trial court granted appellee's motion for summary judgment and Fitzgerald appeals on two points of error.

We affirm.

Appellant first claims error in the granting of appellee's motion for summary judgment because, he says, there was an issue of fact raised concerning the merchantability of the forklift in question. In support of this position Fitzgerald points to his deposition testimony that he had driven forklifts since 1962; he had received driver's training on forklifts; and since his injury on August 3, 1977, he has looked at other forklifts to satisfy his natural curiosity about the design of the forklifts. He then testified that the slot on the carriage of the forklift should be modified by the addition of an Allen screw to prevent the blade from slipping out of the slot. Fitzgerald, on the other hand, admitted in his deposition that he is not a design mechanic, nor an engineer and that he doesn't pretend to be an expert in the area of forklift design. He also conceded that the forklift and blade on the Towmotor Model T50B were basically the same as other forklifts and that the forklift and its blade assembly would pass as standard in the industry, both at the time of his injury and at the time his deposition was taken.

At the summary judgment hearing appellees produced the affidavit testimony of Thomas R. Lajeunesse, who at that time was an engineer and manager of safety and ecology for Towmotor Corporation, the manufacturer of the forklift in question. He had been senior sales engineer for Towmotor from 1971 to 1981. His affidavit read in part:

Furthermore, I am aware of and have inspected as part of my professional responsibilities the forklifts of competitors in the marketplace. I have inspected and reviewed other forklifts, similarly sized to the Model T50B forklift involved in this lawsuit. Similarly sized forklifts are those with a lifting capacity between 2,000 to 5,500 lbs. The T50B forklift, including the carriage, forks and mounting arrangement, would pass without objection in the trade. Particularly, the fork mounting arrangement, wherein the forks are mounted on the carriage, is the standard hook-carriage design concept that is approved and used not only on TOWMOTOR forklifts, but it has been approved and used by all manufacturers of similarly sized forklifts throughout the world. This standardized hook-carriage design permits the free interchange of attachments among forklift manufacturers. The hook carriage arrangement was utilized during 1974 at the time of manufacture of this particular forklift and continues to be utilized at the present, worldwide.

■ In a breach of warranty action for personal injuries as a result of a defect in a product, the plaintiff must establish that the product in question was not merchantable or fit for the purpose for which it was intended on the date of delivery, or in other words at time of manufacture of the product. *Ford Motor Co. v. Tidwell*, 563 S.W.2d 831, 835 (Tex.Civ.App.—El Paso 1978, writ ref'd n.r.e.); TEX.BUS. & COM. CODE ANN. sec. 2.314 (Vernon 1968). The question we have to answer is whether the summary judgment proof raised a fact

issue as to whether or not the forklift was fit for the purposes for which it was intended at the time it left the manufacturer's possession. As was said by the 5th Circuit Court of Appeals, "[t]o recover from a manufacturer on a theory of implied warranty under Texas law, one must establish that there is a defect in the object sold as it left the manufacturer ... The defect may be one of design, material, or manufacture." *Clark v. DeLaval Separator Corp.*, 639 F.2d 1320, 1326 (5th Cir.1981). We hold that the summary judgment evidence did not raise a fact issue on the question of whether the forklift was fit for the purpose for which it was intended at the time it left the manufacturer, Towmotor Corporation, on February 18, 1974.

In determining the correctness of a summary judgment, we must decide if the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corporation*, 450 S.W.2d 827, 828 (Tex.1970). The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor. *Wilcox v. St. Mary's University*, 531 S.W.2d 589, 593 (Tex.1975).

■ In considering the summary judgment proof on the issue of alleged breach of implied warranty of merchantability, which we have set out in this opinion, it is clear that this proof did not contain any legitimate, probative evidence of a defect or flaw in the design, material or manufacture of the forklift when it left the possession of the manufacturer, Towmotor, on February 18, 1974. The testimony of Thomas R. Lajeunesse, an interested expert witness, is clear, positive and direct that the forklift, including the carriage, forks and mounting arrangement, was fit for the purpose for which it was to be used when it left the manufacturer and that the carriage, forks and mounting arrangement

are used by all manufacturers of similarly sized forklifts throughout the world. Fitzgerald admitted that the forklift and blade in question were basically the same as other forklifts he had examined, and that its blade assembly would pass as standard in the industry. We fail to see how even appellant's own testimony can be said to raise a fact issue as to the existence of a breach of implied warranty of the forklift at the time it left the manufacturer.

■ Moreover, we do not think the lay testimony of Fitzgerald, admittedly not an engineer or an expert in forklift or forklift blade assembly design, could raise a fact issue as to the design, material or manufacture of a complicated piece of machinery such as a forklift. Appellant's testimony was incompetent to raise a fact issue on this matter and was probably totally rejected by the trial court in its consideration of the state of the evidence for purposes of summary judgment. *See Duncan v. Horning*, 587 S.W.2d 471, 474 (Tex.Civ.App.— Dallas 1979, no writ); *Murfee v. Oquin*, 423 S.W.2d 172, 174 (Tex.Civ.App.—Amarillo 1967, writ ref'd n.r.e.).

■ The plain, uncontroverted affidavit evidence of Lajeunesse, the Towmotor engineer, though he is an interested witness, is sufficient, considering all of the summary judgment proof here, to support the granting of the summary judgment. *See* TEX.R.CIV.P. 166–A(c). We recognize that the general rule in summary judgment proceedings is that the uncontroverted testimony of interested witnesses does no more than create a fact issue. However, under Rule 166–A(c), an exception to this general rule exists if the uncontroverted testimony of interested witnesses is (1) clear, positive and direct; (2) otherwise credible; (3) free from contradictions and inconsistencies; and (4) could have been readily controverted. *Hunsucker v. Omega Industries*, 659 S.W.2d 692, 697 (Tex. App.—Dallas 1983, no writ). The affidavit testimony of Lajeunesse, supported in part by Fitzgerald's own admissions in his deposition, comports comfortably and convincingly with the meaning of Rule 166–A(c).

Lajeunesse, though an interested witness, was unquestionably an expert witness as shown by his affidavit. Fitzgerald, on the other hand, though he attempted to say that the addition of an Allen screw to the slot on the carriage of the forklift would prevent the blade from slipping out of the slot, freely admitted that he was not a design mechanic nor an engineer and that he was not an expert in the area of forklift design. We hold that neither this nor any other testimony of Fitzgerald raised a fact issue as to unfitness of the forklift when it left the hands of the manufacturer.

We find some similarity between this case and *Tidwell* cited by appellant in his brief for the proposition that circumstantial evidence may be the sole basis for a finding of breach of implied warranty. *Tidwell,* 563 S.W.2d at 835. In *Tidwell* the plaintiff had sued Ford Motor Company complaining of several defects in a new car purchased from one of its dealers, the main defect having to do with a dangerous condition connected with the steering gear which did not appear until after the mechanism was worked on by the dealer. *Id.* With respect to the testimony regarding the steering mechanism, the El Paso court said "[t]his (testimony on steering defect) is of importance because the *Plaintiff and his wife were the only ones that established their complaints, and both readily admitted that they had no mechanical experience.* There was no testimony offered as to what caused the serious turning defect." *Id.* (Emphasis added.) The court held that the plaintiff's evidence was not sufficient to negate the possibility that an intermediate act or agency produced that turning defect. *Id.*

We do not agree that *Tidwell* holds that breach of implied warranty may be proven solely by circumstantial evidence. We think a careful reading of *Tidwell* reveals that the court, by way of dicta, said that the plaintiff could rely on circumstantial evidence to show that the article was defective at the time it left the hands of the manufacturer or seller. *See id.* This is not saying, as Fitzgerald argues, that a plaintiff in a breach of warranty case, may

rely on circumstantial evidence alone to show the existence of a defect. We think the *Tidwell* court was referring only to proof of the time the defect first appeared. Moreover, even if appellant's point as to circumstantial evidence is well taken, his testimony, as we have shown, since it was lay testimony in an area requiring expert testimony, did not raise a fact issue that the forklift in fact was defective in any way when it left the manufacturer.

Appellant's first point of error is overruled.

By his second point of error Fitzgerald argues that the granting of the summary judgment was erroneous for the reason that his cause of action is not barred by the statute of limitations. The applicable statute of limitations is found in TEX.BUS. & COMM.CODE ANN. sec. 2.725 (Vernon 1968), which reads in pertinent part as follows:

(a) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued . . . .

(b) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. *A breach of warranty occurs when tender of delivery is made,* except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

*Id.* (Emphasis added.)

■ It is appellant's position, in order to defeat the barring of his action by limitations, that his cause of action for breach of implied warranty does not arise until the time he discovered or should have discovered the injury. This is not, however, what TEX.BUS. & COMM.CODE ANN. sec. 2.725 says. That section, in part, as shown above, plainly and unequivocally says the cause of action accrues when the breach occurs; a breach of warranty occurs when tender of delivery is made. *Id.* In this

case, the forklift was delivered to Ryder Truck Lines, Fitzgerald's employer on February 25, 1974, the injury occurred August 3, 1977, and suit was filed July 30, 1981. This suit, then, was filed far more than four years after the forklift was delivered. Based upon the explicit provisions of sec. 2.725, appellant's cause of action in warranty would have been barred on February 25, 1978. *See id.*

This court cannot read into the clear provisions of sec. 2.725 a statement that a cause of action for breach of implied warranty does not accrue until the user discovers or should have discovered the warranty. To do so would alter or add to the statute itself and this is for the legislature, not this court, to do. Accordingly, we hold that under the plain English language of sec. 2.725, appellant's cause of action for breach of implied warranty was barred by limitations and that the trial court's granting of summary judgment was correct. *See: Garvie v. Duo-Fast Corp.,* 711 F.2d 47, 48–49 (5th Cir.1983); *Clark,* 639 F.2d at 1325; *Southerland v. Northeast Datsun, Inc.,* 659 S.W.2d 889, 892 (Tex.App.—El Paso 1983, no writ).

Appellant's second point of error is overruled and the judgment is affirmed.