JEEP EAGLE SALES CORPORATION,
Appellant,

v.

MACK MASSEY MOTORS, INC.,
Appellant/Cross–Appellee,

v.

Felicitas GARNICA, Appellee.

No. 08–90–00063–CV.

Court of Appeals of Texas,
El Paso.

July 17, 1991.

Rehearing Overruled Sept. 4, 1991.

Joseph L. Hood, Jr., Scott, Hulse, Marshall, Feuille, Finger & Thurmond, El Paso, for Jeep Eagle.

Donald M. Hunt, Carr, Fouts, Hunt, Craig, Terrill & Wolfe, Lubbock, Howell Cobb, III, El Paso, for Mack Massey.

Mark Pierce, El Paso, Timothy Patton, Pozza & Patton, San Antonio, for Felicitas Garnica.

Before OSBORN, C.J., and FULLER and KOEHLER, JJ.

## OPINION

FULLER, Justice.

The buyer of a Jeep. Cherokee sports/utility vehicle recovered judgment against the selling dealer and manufacturer. The trial court's judgment, as modified, is affirmed in part and reversed and rendered in part.

We shall refer to the manufacturer as Jeep Eagle; the selling dealer as Massey Motors and the buyer as Garnica.

Garnica bought a 1987 Jeep Cherokee from Massey Motors to tow an Airstream trailer which she had ordered. Mrs. Garnica found the performance of the Jeep Cherokee totally unsatisfactory for the purposes intended. Finally, after the drive shaft broke, Mrs. Garnica abandoned the vehicle with Massey Motors and sold her Airstream trailer. She filed suit against Massey Motors and Jeep Eagle alleging violations of the Deceptive Trade Practices Act as well as breaches of express and implied warranties. Massey Motors and Jeep Eagle denied Garnica's allegations, affirmatively alleging that the vehicle had been misused. Massey Motors also counterclaimed against Garnica asserting her DTPA action against the dealer was groundless, brought in bad faith and for harassment. This counterclaim was dropped by Massey Motors but not until the first witness commenced testifying before the jury. However, Massey Motors sought indemnity against Jeep Eagle in the event Garnica obtained a favorable jury verdict.

### Jury Findings—Massey Motors

The jury found as to Felicitas Garnica that Massey Motors:

- Represented that the Jeep had characteristics, uses or benefits which it did not have.
- Represented that its services had characteristics, uses or benefits which they did not have.
- Represented that the Jeep was of a particular standard of quality when it was not.
- Represented that its services were of a particular standard of quality when they were not.
- Failed to disclose that the Jeep would not adequately pull the trailer.
- Failed to honor its obligation to provide warranty repairs.
- Engaged in unconscionable action or course of action.
- Breached a warranty of fitness for a particular purpose.
- Breached an implied warranty of merchantability at time of sale.

The jury found the above conduct was engaged in knowingly by Massey Motors. The jury failed to find that Mrs. Garnica negligently misused the Jeep Cherokee and failed to find her negligent in entrusting the vehicle to her son.

The trial court entered judgment for Garnica as follows:

- $139,378.25—actual damages;
- $47,500.00—attorney's fees;
- $39,602.59—prejudgment interest;
- $2,000.00—mandatory automatic additional damages;
- $420,000.00—punitive damages ($210,000.00 Massey Motors and $210,000.00 Jeep Eagle).
- $648,480.84—TOTAL

The jury also found that Massey Motors was entitled to indemnification from Jeep Eagle. Following post-verdict motions, the trial court entered judgment on the jury verdict along with post-judgment interest.

### POINTS OF ERROR

#### Massey Motors

Massey Motors asserts, by Points of Error Nos. One through Five, that the trial court erred in rendering judgment against it because there was no evidence and/or insufficient evidence of the nine separate

deceptive trade practice violations as found by the jury or that any conduct by Massey Motors caused Garnica's damages. Points of Error Nos. Six through Nine complain that there was no evidence and/or insufficient evidence to support the various damages findings by the jury.

The jury found Massey Motors committed nine separate acts that fall within the purview of the DTPA, each of which constituted a proximate cause of Garnica's damages.

## EVENTS LEADING UP TO THE PURCHASE

Mrs. Garnica sought to purchase a vehicle capable of towing an Airstream trailer she had on order. She went to Massey Motors and initially dealt with a salesman who referred her to the sales manager who had some familiarity with towing requirements. The sales manager called the Airstream dealer concerning the specifications of the Airstream trailer Mrs. Garnica was purchasing. Mrs. Garnica testified the purpose of the inquiry with the Airstream dealer was to determine the specifications of the trailer and to advise her whether the Jeep Cherokee could do the job of pulling the twenty-three foot trailer. The Jeep Cherokee had a towing capacity of 5,000 pounds and yet the Airstream trailer had a 5,800 pound gross vehicle weight rating. It was admitted at trial that it would be important to determine the gross weight of the Airstream in order that the purchaser had a vehicle capable of towing such weight. There was evidence that Massey Motors did represent that the Jeep Cherokee was suitable to tow the Airstream. The sales manager admitted that if the salesman informed the Garnicas that the Jeep Cherokee's specifications were sufficient to handle the Airstream trailer that this constituted a misrepresentation. It was only after the sales manager assumed this responsibility of investigation that Massey Motors recommended to Appellee

the purchase of the Jeep Cherokee. Mrs. Garnica relied on the recommendation of Massey Motors and purchased the Jeep Cherokee.

After the purchase of the vehicle by the Garnicas, they experienced various problems in towing their Airstream but basically their complaint was that it did not have sufficient power to pull the trailer. The Garnica's expert testified that the Jeep Cherokee did not have a sufficiently large enough motor to pull the twenty-three foot trailer. He stated that the use of the underpowered Jeep Cherokee to pull the trailer could have overly stressed the vehicle causing the transmission and drive shaft problems that occurred. The expert testified that the continual problems with the Jeep Cherokee were related to the unsuitability of the vehicle to tow the Airstream. He also stated that the occurrence of the broken drive shaft could have been caused by the excessive stress placed on the Jeep Cherokee due to towing the trailer.

■ Our Supreme Court stated in *Spradling v. Williams*, 566 S.W.2d 561, 563 (Tex.1978) that:

*If any one of those listed acts or practices* [enumerated in § 17.46(b) ] *is found factually to have happened, it is by law an unlawful deceptive trade practice because subsection 17.46(b) makes it unlawful.* [Emphasis added].

Therefore, it takes only a finding of one violation to apply the act in the instant case. *HOW Ins. Co. v. Patriot Financial Services of Texas, Inc.,* 786 S.W.2d 533 (Tex.App.—Austin 1990, no writ).

Problems immediately developed when Mrs. Garnica commenced towing the Airstream with the Jeep Cherokee. She had to repeatedly exercise her right under the vehicle warranty and return the vehicle to the dealer for repair.

**Complaints & Repairs**

| | | |
|---|---|---|
| March 25 | | Date the Jeep Cherokee was purchased. |
| June 10 | 2,340 miles | Rear tailgate stained by wiper fluid, prepped, spotted, primed and painted. |
| June 11 | 2,340 miles | Another repair order made complaining of transmission slippage. Installed rear windshield washer parts and a throttle adjustment was made. |
| June 19 | 2,522 miles | Complaint that shift lever kicks into lower speed. Throttle linkage was again out of adjustment; transmission pressure was tested. There was also a complaint vehicle was "shuddering on acceleration." Slip yoke nut connected to drive shaft was tightened and the throttle sensor was adjusted. |
| June 30 | 2,826 miles | Complaint that coolant was leaking. System was tested, the overflow hose was blown off—hose reinstalled and replaced hose clamp. Pressure tested system—ok. Left door latch broken, replace. |
| July 16 | 3,593 miles | Complained of engine hesitation on acceleration. Repaired hose causing vacuum leak at vacuum canister. Replaced rear washer b/c leaking and rear washer arm. |
| Aug. 31 | 7,075 miles | Complaint of rough shifting and engine stalling when hot. The work order indicates that on test drive, it shifted rough one time, but no problem. Also, work order shows that "transmission auto shift indicator guide torn." Work order shows nothing regarding engine stalling. |
| Sept. 11 | 7,229 miles | DRIVE SHAFT TWISTED APART. |

---

Before the drive shaft twisted apart, Massey Motors told Mrs. Garnica to take her Jeep Cherokee and go elsewhere. The closest Jeep Cherokee dealer was in the State of New Mexico, some forty miles away. When the drive shaft twisted apart, the Jeep Cherokee was taken to Massey Motors. Massey Motors, with the concurrence of the manufacturer, Jeep Eagle, refused to make a warranty repair. Appellants contended this breakdown was due to misuse. The jury found otherwise. The Airstream trailer was eventually sold and this lawsuit became a reality.

### Evidence Supporting Jury Findings as to Massey Motors

Massey Motors asserts since it was the service related to the maintenance and repair of the Jeep Cherokee after the purchase that formed the basis of Appellee's complaint, it could not be a basis for inducing Mrs. Garnica to enter into the transaction. However, the service and/or advice

that was sought before and simultaneously with the purchase of the Jeep Cherokee, could well have been the basis for the jury determination. Section 17.45(2) of the DTPA defines service as "work, labor, or service purchased or leased for use, including **services furnished in connection with the sale** or repair of goods." Tex.Bus. & Com.Code Ann. § 17.45(2) (Vernon 1987). "Service" has also been defined by the courts as "action or use that furthers some end or purpose; conduct or performances that assists or benefits someone or something." *Van Zandt v. Fort Worth Press,* 359 S.W.2d 893 (Tex.1962).

In the instant case, the service provided by the Massey Motors' sales staff included undertaking the responsibility of checking with the Airstream dealer and thereafter representing that the Jeep Cherokee, with an automatic transmission, was suitable for pulling the Airstream. Massey Motors' sales manager testified he knew the intended purpose for the Appellee's use of the proposed vehicle and that he undertook to investigate the specifications of the Airstream. After having undertaken the inquiry, he recommended the Jeep Cherokee as being suitable for the purposes Mrs. Garnica was seeking—that of towing the Airstream trailer she had on order.

The "other" service provided included the repairs made in conjunction with Appellee's complaints after the sale. There were repeated complaints of rough shifting and "kicking" and lack of power with no action by Massey Motors. Massey Motors refused to honor the free oil change that was part of the purchase transaction. Finally, the service manager refused to talk with the Appellee and she was told to go elsewhere. All of this evidence may be considered cumulative to the conduct or performance of service by Massey Motors after the sale. There was sufficient evidence for the jury to determine if Massey Motors had misrepresented its services, whether the service be in conjunction with the sale of the Jeep Cherokee or after the sale of

maintenance and repair of the vehicle. The issues submitted to the jury were not specific as to which type of service, before or after the sale. However, no objection was made as to lack of specificity and, therefore, the jury could make their determination under either theory.

## REPRESENTATION AND WARRANTY

The jury found that both Appellants breached an implied warranty of merchantability or fitness at the time of the sale which was a producing cause of damages to Mrs. Garnica.

■ For an action to lie under the DTPA, there must be a showing that the representations about the vehicle were false, deceptive or misleading. Tex.Bus. & Com.Code Ann. § 17.46(a) (Vernon 1987); *Sidco Products Marketing, Inc. v. Gulf Oil Corp.,* 858 F.2d 1095 (5th Cir.1988). In addition, the failure to disclose must have been made knowingly, with the intent to induce the customer into a transaction. *Parks v. U.S. Home Corporation,* 652 S.W.2d 479 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd); *Robinson v. Preston Chrysler–Plymouth,* 633 S.W.2d 500 (Tex. 1982). Tex.Bus. & Com.Code Ann. § 17.-46(b)(23) (Vernon 1987).

■ Under a claim of warranty of merchantability, there must be a showing that there was a defect which rendered the goods "unfit for ordinary purposes for which they are used." *Plas–Tex, Inc. v. U.S. Steel Corporation,* 772 S.W.2d 442 (Tex.1989); *Ford Motor Company v. Tidwell,* 563 S.W.2d 831 (Tex.Civ.App.—El Paso 1978, writ ref'd n.r.e.). Likewise, a claim of warranty of fitness requires that goods serve their particular purpose. Tex. Bus. & Com.Code Ann. § 2.315 (Vernon 1968).

*Failure to make Warranty Repairs*

■ There can be a breach of warranty only where a warranty in fact existed. *Plas–Tex, Inc. v. U.S. Steel Corporation,* 772 S.W.2d 442; *Ford Motor Company v. Tidwell,* 563 S.W.2d 831. Massey Motors contends that only speculation supports

the supposition that the drive shaft was defective. It is true that there is no direct evidence of defect. But, where there is no direct evidence of a defect, then circumstantial evidence may be applied. *Ford Motor Company*, at 835. To establish through circumstantial evidence that a defect existed, there must be a showing that (1) there was proper use of the goods and (2) malfunction. *Plas–Tex, Inc. v. U.S. Steel Corporation*, 772 S.W.2d 442.

Dr. Stafford, a metallurgist, testified on behalf of Appellant Massey Motors that the "strength" of the metal in the drive shaft was about medium. He saw nothing that indicated that there was a flaw in the metal or a defect that contributed to the separation of the drive shaft.

But, Dr. Stafford also stated that he did not test for flaws even though there are "various techniques that will identify, characterize, measure the size and presence of flaws."

Additionally, Dr. Stafford's report indicated that additional design analysis was needed but none was performed. Dr. Stafford, as a metal expert, acknowledged that he was not an automotive expert. Therefore, he had "not evaluated the stresses applied to the drive shaft in this case." The testing that Dr. Stafford performed involved only tensile strength and hardness of the metal. The burden to prove the defect was upon the Appellee, and we find that Appellee failed to carry this burden. But, there was abundant evidence before the jury of proper use of the Jeep Cherokee. Mrs. Garnica testified that she drove the vehicle according to the instructions given her by Appellant Jeep Eagle's representative, who never indicated to her that she was misusing the Jeep Cherokee. Appellee's expert, "Dutch" Schmidt, testified that he examined the Jeep Cherokee for abuse and found none. The Appellee's son testified that when he put the vehicle in reverse gear to back out of the school parking lot at a speed of about three to four miles-per-hour, the drive shaft fell out.

Thus, evidence was before the jury showing proper use of the Jeep Cherokee.

The broken drive shaft was introduced into evidence. There was no dispute that the drive shaft had broken, only as to what caused it to twist and break. Dutch Schmidt testified that the drive shaft twisted when the vehicle was moving forward, but he could not determine what direction the vehicle was traveling when it broke. He stated that the drive shaft could have twisted some time before it broke, but when it broke the driver would know immediately. His own theory, as an experienced mechanic, was that if the bolts holding the drive shaft in place worked loose, the drive shaft would drop off-center causing the shaft to twist. Additionally, there was in evidence that at least two adjustments were made to the transmission and a repair of the slip yoke all within one month.

Massey Motors represented that the complaints concerning the transmission and drive shaft were repairable or adjustable. There were repeated adjustments to the transmission which purportedly corrected the problem each time. However, the jury had evidence before it that the repeated problems that the Appellee experienced such as stalling, rough shifting and transmission slippage would cause such stress on the frame, suspension and drive line. The Jeep Cherokee may well have left the factory without a proven defect, but the jury was entitled to believe that Massey Motors had failed to make proper warranty repairs to the transmission and drive shaft. The failure to properly repair or make adjustments could have caused the stress that resulted in the eventual twisting and ultimate breakage of the drive shaft. This evidence supported the jury determination that the Jeep Cherokee simply was exceeding its towing capacity and that Massey Motors had misrepresented the fact that this was the proper vehicle suitable for towing the Airstream trailer.

### Disclaimer

■ Massey Motors contends that the warranty of fitness for a particular pur-

pose was waived because the purchase order stated that there were no dealer warranties. In addition, the purchase order referred Mrs. Garnica to the reverse side which stated the manufacturer made no warranties except the express written warranty furnished by Jeep Eagle. Tex.Bus. & Com.Code Ann. § 2.316(b), (c) (Vernon 1968). No evidence was presented that Appellee was aware of the disclaimer, and the trial court did not make a finding that the disclaimer was conspicuous as a matter of law. Also, the jury finding of unconscionability rendered unenforceable the warranty disclaimer. *Tri–Continental Leasing Corp. v. Law Office of Richard W. Burns,* 710 S.W.2d 604 (Tex.App.—Houston [1st Dist] 1985, writ ref'd n.r.e.).

## *Unconscionability*

■ Massey Motors was in a position of expertise in the sale of the Jeep Cherokee, and the Appellee relied on their resources and superior knowledge regarding the Jeep Cherokee's capabilities. The sales manager even advised Mrs. Garnica that it was necessary that the vehicle have an automatic transmission and that any warranties offered by Jeep Eagle would not be honored if Appellee bought a Jeep Cherokee with a standard transmission. In addition, the sales manager, after investigating the specifications of the Airstream trailer, then represented to Mrs. Garnica that the Jeep Cherokee was suitable for the purpose intended. In light of Massey Motors superior knowledge and expertise concerning Mrs. Garnica's inquiry and reliance, the evidence was sufficient to support the jury finding of unconscionability on the part of Massey Motors.

## *"Knowingly" Requirement*

■ In order for the jury to assess punitive damages, there must be a showing that the defendant acted "knowingly." Tex.Bus. & Com.Code Ann. § 17.50(b)(1) (Vernon 1987).

"Knowingly" means "actual awareness of the falsity, deception or unfairness of the act or practice giving rise to the consumer's claim," or in a warranty action "actual awareness of the act or practice constituting the breach of warranty...." Tex.Bus. & Com.Code Ann. § 17.45(9) (Vernon 1987); *Jim Walter Homes, Inc. v. Valencia,* 690 S.W.2d 239 (Tex.1985); *Luna v. North Star Dodge Sales, Inc.,* 667 S.W.2d 115 (Tex.1984). Massey Motors' sales manager undertook to determine the suitability of the Jeep Cherokee for the expressed intended purpose of towing the Airstream trailer. He thereafter represented that the Jeep Cherokee was the proper vehicle for Mrs. Garnica to buy. This conduct constituted an undertaking of superior knowledge and expertise with "knowing" scienter.

The sales manager's representation of the suitability and capabilities of the Jeep Cherokee to tow the Airstream, in conjunction with the unfulfilled promise of a free oil change, the dealership's refusal to continue servicing the vehicle and finally the concurrence with Jeep Eagle in denying the claim on the drive shaft demonstrates Massey Motors' "knowingly" conduct in treating Appellee in a glaring and flagrant manner inconsistent with customer service and satisfaction in connection with the sale of goods or services. There was sufficient evidence for the jury to determine that Massey Motors acted in a "knowingly" manner. The evidence regarding "service" was also sufficient to support a finding of violation of the DTPA.

## *Producing Cause*

■ As stated previously, it takes a finding of only one violation of those listed acts or practices enumerated in Section 17.-46(b) to be sufficient to constitute an unlawful deceptive practice. *Spradling v. Williams,* 566 S.W.2d 561; *HOW Ins. Co. v. Patriot Financial Service of Texas,* 786 S.W.2d 533.

This leads to the determination of whether there was sufficient evidence regarding any one violation of the Act to be a producing cause of damages. Producing cause

does not include foreseeability, rather whether a defendant's action, in a natural sequence, excited, contributed to or factually caused the harm complained of. *Hycel Inc. v. Wittstruck,* 690 S.W.2d 914 (Tex. App.—Waco 1985, writ dism'd). The evidence regarding "service" in regard to the Jeep Cherokee was sufficient to support a finding of a violation of the act. The representations attributed to service in conjunction not only with the sale of the Jeep Cherokee but the representations as to maintenance and repairs were established by the evidence and shown to be relied upon by the Appellee. Thus, under the definition of producing cause, the service and representations as to the characteristics, uses or benefits of the Jeep Cherokee would be sufficient to have been found to have contributed or factually caused the harm complained of by Appellee.

### Actual Damages

■■■ Massey Motors asserts that Appellee's testimony regarding "market value" was not proper. Texas courts recognize an owner's testimony regarding "market value" as valid. *Fidelity & Casualty Company v. Underwood,* 791 S.W.2d 635 (Tex.App.—Dallas 1990, no writ); *Mercedes–Benz of North America v. Dickenson,* 720 S.W.2d 844 (Tex.App.—Fort Worth 1986, no writ). We find that there was sufficient evidence for the jury to determine the disparity between the value received and the consideration paid.

Regarding mental anguish, sufficient evidence was introduced at trial on whether Appellee suffered more than "mere worry, anxiety, vexation, embarrassment, or anger." *Town East Ford Sales, Inc. v. Gray,* 730 S.W.2d 796, 803 (Tex.App.—Dallas 1987, no writ). There was also sufficient evidence based on the proper measure of damages to support the jury's award of damages not only for benefit of the bargain but for the additional damages. We cannot sustain the jury's award of $24,-600.00 for the loss of use of the Jeep Cher-

okee. *Luna v. North Star Dodge Sales, Inc.,* 667 S.W.2d 115; *Town East Ford Sales, Inc. v. Gray,* 730 S.W.2d 796; *Mercedes–Benz of North America v. Dickenson,* 720 S.W.2d 844; *Alamo National Bank v. Kraus,* 616 S.W.2d 908 (Tex.1981).

### Damages for Loss of Use of the Jeep Cherokee

■■■ The jury awarded Mrs. Garnica $24,600.00 for loss of use of the Jeep Cherokee. Appellee's theory was that Mrs. Garnica was entitled to be compensated for the loss of use of the Jeep Cherokee from the date the drive shaft broke (September 11, 1987) until the time of trial, 720 days. She offered proof of the cost to rent a vehicle for the 720 day period and this was her theory of recovery for loss of use. The jury question submitted merely asked the amount that would reasonably compensate Mrs. Garnica for her damages for:

**C. Loss of use of the Jeep.**

**ANSWER: $24,600.00.** [Emphasis added].

The jury was given no further instruction as to the proper measure of damages but a duty to mitigate damages was given. Evidence showed that Mrs. Garnica had purchased a replacement vehicle in April of 1988. The measure of damages sought and recovered by Appellee was improper under the facts of this case. The upper time period for compensation for loss of use should have been limited to 210 days which was when Mrs. Garnica bought the replacement vehicle. Therefore, the maximum allowable amount for loss of use would have been $9,439.50 (the maximum rental value asserted at trial was $44.95 × 210 days). Equity will not permit double recovery for both rental and replacement values because of the duty to mitigate. Mrs. Garnica elected to pursue recovery of rental value rather than replacement value. *Town East Ford Sales, Inc. v. Gray,* 730 S.W.2d 796. We find, therefore, that the trial court judgment that found actual damages of $139,378.25 by including the $24,-600.00 damages award for loss of use was incorrect. The judgment for actual damages should be reformed to show a recov-

ery of actual damages in the amount of $124,217.75 instead of $139,378.25.

We overrule Massey Motors' points of error except those complaining of the damages awarded for loss of use of the Jeep Cherokee.

## JURY FINDINGS AND COURT DETERMINATION OF INDEMNIFICATION AGAINST JEEP EAGLE

Jeep Eagle asserts, by Points of Error Nos. One through Four, that the evidence was legally and/or factually insufficient to support the jury findings against it.

Question No. 2 was:

Did JEEP EAGLE SALES CORPORATION do any of the following that was a producing cause of damages? Answer "Yes" or "No."

A. Represented to Felicitas Garnica that the Jeep in question had characteristics, uses or benefits which it did not have?
ANSWER: Yes.

B. Represented to Felicitas Garnica that the Jeep in question was of a particular standard of quality when it was not? Answer "Yes" or "No."
ANSWER: Yes.

C. Failed to honor its obligation to provide warranty repairs?
ANSWER: Yes.

### Representations

■ Jeep Eagle contends that the only representations made were contained in a written brochure. The evidence in this case does include a brochure advertising this particular vehicle as having "improved towing capability." There is no proof that it did not. Mrs. Garnica had not towed a trailer with a Jeep Cherokee before her purchase of this vehicle. She did not and could not testify that the Jeep Cherokee had not improved its towing capability. Neither did Appellee's expert, Dutch Schmidt, testify that the vehicle had not improved its towing capacity. The record is void of evidence that this representation was false or that it in any way had a causal

connection with the failure which is a basis of this suit. In addition, it must again be noted that Jeep Eagle listed a towing limitation for this particular vehicle, and Appellant exceeded that towing capacity with the Airstream trailer she had purchased. In *Chrysler Corporation v. Schuenemann,* 618 S.W.2d 799 (Tex.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.), the Court found evidence to support a finding that an implied warranty of fitness was breached. But in the instant case, Dutch Schmidt testified that a trailer with a gross weight of 5,800 pounds should be towed by a vehicle with a 350 horsepower engine. His testimony actually confirmed what the vehicle owner's manual stated. The Jeep Cherokee, with its 242 horsepower engine, was not designed to tow the Airstream trailer that Mrs. Garnica had purchased.

We, therefore, find that there was no evidence to support the two jury findings: (1) that Jeep Eagle represented to Appellee that the Jeep Cherokee had characteristics, uses or benefits which it did not have; and (2) that Jeep Eagle represented to Appellee that the Jeep Cherokee was of a particular standard of quality when it was not.

### Failure to Provide Warranty Repairs

■ The Owner's Manual which Mrs. Garnica received provides:

The Base Warranty covers any repairs or service adjustments needed during the Base Warranty period due to defects in material or workmanship occurring in normal use, except for those items listed under the caption "What Is Not Covered".

In this case, the drive shaft failure occurred during the base warranty period and there is no applicable exclusion. The issue is then narrowed to the question of whether the failure resulted from a defect in material or workmanship. Appellee asserts that Jeep Eagle refused to honor its warranty on the basis the drive shaft twisted as a result of customer abuse. The evidence at trial was conflicting and not conclusory as to the cause of the broken

drive shaft. There was evidence by Appellee of proper use and a denial of abuse. But there was no affirmative evidence produced by Appellee that there was a defect due to material or workmanship.

Appellee's expert, Dutch Schmidt, found no visual failure of the metal and saw no flaws in the drive shaft which he could identify as resulting from material or workmanship. Appellant's expert did both strength and hardness tests on the drive shaft and found no flaws in the metal.

We find that there was no evidence to support the submission of the jury questions as to Jeep Eagle. Therefore, it naturally follows that there was no evidence to support the answer of the jury that Jeep Eagle failed to honor its obligation to provide warranty repairs.

*Implied Warranty of Merchantability*

 In order to recover for breach of implied warranty of merchantability, Mrs. Garnica had the burden of proving that the goods were defective at the time they had left the manufacturer's or seller's possession. The evidence must show that the goods were unfit for the ordinary purposes for which they were designed because of a defect. *Plas–Tex, Inc. v. U.S. Steel Corporation,* 772 S.W.2d 442. We have already stated there was no evidence of a defect. The Jeep Cherokee was not designed to pull the 5,800 pound Airstream trailer. There is no evidence that an owner would ordinarily use a towing vehicle beyond its design capacity.

We, therefore, hold that there was no evidence that Jeep Eagle breached an implied warranty of merchantability.

Jeep Eagle's Points of Error Nos. One through Four are sustained.

The net result of our holding is that Appellee Garnica's judgment against Appellant Jeep Eagle cannot stand and therefore Appellant Massey Motors' right to indemnification also fails.

RE–COMPUTATION OF DAMAGES
PURSUANT TO THIS
OPINION

 Our Texas Supreme Court has prescribed a formula for computing the total judgment to include the actual damages, automatic and punitive damages.

(1) Three times the first $1,000.00 of actual damages.

(2) Not more than three times the total amount of actual damages in excess of $1,000.00.

*Jim Walter Homes, Inc. v. Valencia,* 690 S.W.2d 239 (Tex.1985); *Fairmont Homes, Inc. v. Upchurch,* 711 S.W.2d 618 (Tex. 1986). The application of this formula laid down by our Supreme Court requires modification of the trial court's judgment.

Because of the incorrect damages award of $24,600.00 for loss of use, and our holding that Appellee should instead be entitled to only $9,439.50 requires that total judgment for actual damages of $139,378.25 must be modified by reducing the actual damages amount to $124,217.75. This reduced amount plus the $2,000.00 automatic damages, plus $210,000.00 punitive damages should total $336,217.75 which does not exceed the maximum amount recoverable under this DTPA cause of action. Prejudgment interest and attorney's fees are then added for Appellee's total recovery.

We further find that the trial court was incorrect in applying prejudgment interest to attorney's fees; however, it should be applied to the actual damages of $124,217.75.

CONCLUSION

We affirm the judgment as to Mack Massey Motors, Inc. as modified and reduced.

We reverse and render a take nothing judgment against Jeep Eagle Sales Corporation.

We remand the case to the trial court for entry of a judgment against Mack Massey Motors, Inc. consistent with this opinion.