Travis B. BRYAN, Jr., Heir-at Law, of
the Estate of the Deceased, Ruth
Bryan, Appellant,

v.

Raymond DOCKERY, Appellee.

No. 01–89–00330–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

April 12, 1990.

Travis B. Bryan, Bryan, for appellant.

Jody K. Sims, Austin, for appellee.

Before WARREN, SAM BASS and DUNN, JJ.

## OPINION

DUNN, Justice.

The jury found appellant, Ruth Bryan,[1] 87% negligent and Michael Hejl[2] 13% negligent for personal injuries sustained by appellee, Raymond Dockery, and awarded Dockery $13,000.00 in damages and $7,255.98 in pre-judgment interest.

On December 23, 1983, Dockery, a postal employee, was on the Bryan premises to deliver a package to Hejl, who lived in an upstairs garage apartment. Dockery stat-

ed that, because the package was too large to fit inside the mailbox, he went upstairs to attempt delivery, and no one was home; that as he started to descend the stairs, a portion of the stairs collapsed causing him to fall on his head and shoulders. Dockery testified that following the accident, he first reported the fall to Bryan, and then left the premises to seek medical treatment.

Hejl testified that in May 1980, he entered into an oral lease to rent a garage apartment from Bryan, in Bryan, Texas, on a month-to-month basis at a cost of $85.00 a month. Hejl stated that there was no written lease agreement or contract between him and Bryan, and that the only access to the garage apartment was by a wooden stairway. Hejl testified that he lived in the apartment until May 1984; that there was no agreement between him and Bryan concerning who would be responsible for repairs to the apartment; and that, if something needed to be repaired, he would call Bryan and she would notify someone to take care of the maintenance. Hejl further stated that about one to two weeks before Dockery was injured on the stairs, Bryan called and inquired about the condition of the steps, and he told her that they were in poor condition. Hejl told Bryan he would take care of them if she wanted him to do so, but nothing was done before Dockery fell. Hejl testified that, when he returned to the apartment on December 23 and saw that the steps had collapsed, he ordered lumber and began repairing the stairs. Hejl stated that he ordered the lumber without consulting Bryan, and Bryan paid him when he presented a bill for the cost of repairs. Hejl testified that he did not repair the steps right away because of the cold weather and because he was working full time.

On cross-examination, Hejl stated that he was a carpenter; that he had replaced two of the steps long before they collapsed; that he had not notified Bryan about the

---

1. Bryan died before trial; her deposition testimony is cited herein.

2. Hejl does not appeal the jury's finding.

repair, nor asked to be compensated for the work. He further stated that he had once painted the inside of the premises and replaced a door lock, and that if something needed to be done, he would probably be the one to do it because Bryan relied on him.

Bryan, in her deposition,[3] stated that there was no agreement between she and Hejl as to who would make repairs to the property; that she was crippled; that she not been upstairs in the apartment for several years; that she asked Hejl if he wanted her to telephone another carpenter to repair the stairs, and he responded that he would make the repairs; that she was not sure if she learned of the condition of the stairs before or after Dockery fell; and that Hejl waited a while before repairing the stairs. Bryan also stated that she did not take care of ordinary repairs such as leaky faucets; that Hejl was on his own; that she did not have anything to do with him other than collecting his rent; that if anything did go wrong with the apartment, Hejl would repair it because he repaired everything; and that she depended on Hejl to inform her of repairs that were needed to the apartment, so that she could get them fixed. When asked whether Hejl was responsible for the collapse of the stairs that led to Hejl's apartment and for Dockery's injury, Bryan responded, "No, that's my responsibility, I own it, . . . . and I will take all the blame."

■ Dockery contends that Bryan waived her motion for directed verdict, and motion for new trial. It is a well-settled rule that a defendant who elects not to stand on its motion for an instructed verdict, and introduces its own evidence, waives its motion for directed verdict. *Texas Steel Co. v. Douglas*, 533 S.W.2d 111, 114 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n.r.e.). In this case, Bryan waived her motion for directed verdict because she proceeded to put on evidence after she had made the motion for directed verdict, and she did not reurge the motion at the close of the case. Furthermore, Bryan did not

present her motion for new trial; thus, it is overruled by operation of law. Although appellant did not preserve error on her motion for directed verdict and new trial, she preserved error on the judgment notwithstanding the verdict.

In appellant's first point of error, she contends that the trial court erred in denying her motion for directed verdict and motion for judgment notwithstanding the verdict, because there was no evidence to establish that she had a duty of care to Dockery, or was negligent.

■ In reviewing a "no evidence" point, the reviewing court considers only the evidence and inferences, when viewed in their most favorable light, that tend to support the finding, and disregards all evidence and inferences to the contrary. *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex. 1988); *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987). An appellate court is limited to reviewing only the evidence tending to support the jury findings in a "no evidence" point of error. *Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 242 (Tex. 1988). If there is any evidence of probative force to support the finding, the point must be overruled, and the finding upheld. *Id.*

Bryan relies on *Yarbrough v. Booher*, 141 Tex. 420, 422, 174 S.W.2d 47, 48 (1943), and argues that because there was no contractual agreement between her and Hejl, she is not liable for injuries that occurred on the premises. Dockery contends that *Yarbrough* is no longer applicable, given the statutory duty to repair. In *Yarbrough*, the supreme court held that absent a statute or agreement by the landlord to repair the demised premises, and absent the landlord's fraud or concealment in failing to disclose hidden defects of which he has knowledge, the tenant takes the risk of the premises' safety, and the landlord is not liable to him, or to any person entering under his title or by his invitation, for injuries caused by reason of their unsafe condition. *Yarbrough*, 141 Tex. at 422, 174 S.W.2d at 48; *see also Gray v. Block*, 416 S.W.2d 848, 850 (Tex.Civ.App.—Eastland

---

3. Bryan's deposition was taken in November 1986. Bryan was ninety years old and the re- sponses given in the deposition are somewhat confusing and difficult to follow.

1967, no writ). Furthermore, the making of repairs does require a landlord to keep the leased premises in repair. *Yarbrough*, 141 Tex. at 422, 174 S.W.2d at 48. However, the Texas Property Code imposes a duty on the landlord and provides:

(a) A landlord shall make a diligent effort to repair or remedy a condition if:
(1) the tenant specifies the condition in a notice to the person to whom or to the place where rent is normally paid;
(2) the tenant is not delinquent in the payment of rent at the time notice is given; and
(3) the condition materially affects the physical health or safety of an ordinary tenant.

(b) The landlord does not have a duty to repair or remedy a condition caused during the term of the lease, including a renewal or extension, by the tenant, a member of the tenant's family, or a guest of the tenant, unless the condition was caused by normal wear and tear.
(c) This subchapter does not require the landlord:
(1) to furnish utilities from a utility company if as a practical matter the utility lines of the company are not reasonably available; or
(2) to furnish security guards.
(d) The tenant's notice under Subsection (a) must be in writing only if the tenant's lease is in writing and requires written notice.

TEX.PROP.CODE ANN. § 92.052 (Vernon 1984).

In *Kamarath v. Bennett*, 568 S.W.2d 658, 660–61 (Tex.1978), the court held that in a rental of a dwelling unit, whether for a specified time or at will, there is an implied warranty of habitability by the lessor that the unit is habitable and fit for living.

■ Even without a contract between Bryan and Hejl concerning responsibility for repairs, the evidence viewed in a light most favorable to the verdict establishes that Bryan depended on Hejl to inform her of needed repairs; that, when notified, Bryan would contact someone to come on the premises to make the necessary repairs; and that Bryan admitted responsibil-

ity for the condition of the stairs, as owner of the garage apartment. Thus, the record supports the court's finding that Bryan's negligence was the proximate cause of the accident.

■ Appellee asserts that Bryan had a statutory duty to repair defective conditions on her property. The evidence shows that Bryan was on notice of the stairs' condition and made an effort to have them repaired, and that Hejl could also have been injured by the condition of the steps. There was no evidence as to whether Hejl was delinquent in the payment of his rent. There is insufficient evidence to find that Bryan had a statutory duty to repair.

■ Within this point, Bryan argues that because she did not retain possession of the stairs, she did not have a duty to repair. Where a landlord retains possession or control of the leased premises, the landlord is charged with the duty of ordinary care in maintaining the portion retained so as not to damage the tenant. *Parker v. Highland Park, Inc.*, 565 S.W.2d 512, 515 (Tex. 1978); *Jones v. Houston Aristocrat Apartments, Ltd.*, 572 S.W.2d 1, 2 (Tex.Civ.App. —Houston [1st Dist.] 1978, writ ref'd n.r. e.). In *Prestwood v. Taylor*, 728 S.W.2d 455, 459–60 (Tex.App.—Austin 1987 writ ref'd n.r.e.), the court held that the holder of legal title to the premises is not necessarily the "possessor" of the premises; rather, the legal status of "possessor" is a conclusion inferred from underlying facts which must be proved. The factors relevant to possession are set out in section 328 of the Restatement of Torts, which defines "possessor" as:

(a) a person who is in occupation of the land with intent to control it, or
(b) a person who has been in occupation of the land with intent to control it, if no other person has subsequently occupied it with intent to control it, or
(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under clauses (a) and (b).

Restatement (Second) of Torts § 328E (1965).

In this case, the evidence showed that Bryan's physical handicap prevented her from using the stairwell to the apartment for years, and that Hejl had sole access to the stairs leading to the garage apartment. However, Bryan stated in her deposition that she was responsible for the stairs in the apartment because she owned the apartment. Although Bryan had not used the stairs for several years, her testimony is sufficient to establish that she did intend to retain control and possession of the stairs leading up to the apartment.

Appellant's first point of error is overruled.

In Bryan's second point of error, she contends that the trial court erred in refusing to submit her requested special issues numbers one, two, three, and four and requested instruction number three.

To determine if the trial court has abused its discretion in refusing to submit requested questions, the reviewing court reviews the evidence as if the trial court had instructed the verdict. *Phillips Pipeline Co. v. Richardson*, 680 S.W.2d 43, 48 (Tex.App.—El Paso 1984, no writ). The evidence must be considered in favor of the party against whom the questions were refused, and if there is any conflicting probative evidence in the record, those questions are for the jury's determination. *Id.* The standard of review for a trial court's instruction to the jury is that an error in instructing or failing to instruct must have caused, or can be reasonably calculated to have caused, the rendition of an improper verdict. Tex.R.App.P. 81(b)(1); *see, e.g.*, *Gulf Coast State Bank v. Emenhiser*, 562 S.W.2d 449, 453–59 (Tex.1978).

More specifically, Bryan argues that these special issues and instructions were controlling issues determinative of whether Bryan owed Dockery a duty of care with respect to the condition of the stairs. Dockery contends that the special issues and instructions were irrelevant to the issue of Bryan's negligence. In Dockery's petition, he alleged that Bryan was negligent in: (1) failing to inspect the stairs or to discover the dangerous condition of the stairs; (2) failing to correct the defective stairway; and (3) failing to warn invitees of the dangerous condition.

The questions and issues Bryan complains of are as follows:

Question No. 1

Do you find from a preponderance of the evidence that Michael Hejl had a contractual right to require Ruth Bryan to repair all defects in the leased premises?

Question No. 2

Do you find from a preponderance of the evidence that Michael Hejl was the possessor of the leased premises?

A "POSSESSOR" is defined as any of the following:

(a) A person who is in occupation of the premises with intent to control it, or

(b) A person who has been in occupation of the land with intent to control it, if no other person has subsequently occupied it with intent to control it, or

(c) A person who is entitled to immediate occupation of the land, if no other person is in possession under (a) or (b) above.

*Prestwood v. Taylor*, 728 S.W.2d 455 (Tex.App.—Austin 1987, writ ref'd n.r.e.)

Question No. 3

Do you find from a preponderance of the evidence that the steps were not in a defective condition when Michael Hejl took possession of the leased premises?

Question No. 4

Do you find from a preponderance of the evidence that Ruth Bryan made a diligent effort to repair or remedy the problem connected with the defective stairway?

Tex. Property Code 92.052

Instruction No. 3

You are instructed that the making of repairs does not constitute an admission of any duty to keep the leased premises in repair, nor is it evidence of an agreement to keep the leased premises in repair, nor does it operate to make a new or collateral agreement to keep the premises in repair.

*Yarbrough v. Booher*, 141 Tex. 420, 174 S.W.2d 47, 48 (1943).

**452**

■ Whether a contract to repair existed between Hejl and Bryan is irrelevant, because Bryan admitted her responsibility for the condition of the stairs in the apartment. Thus, the court's refusal to submit issue number one was not erroneous because the issue was not relevant to a finding of negligence.

■ The court also did not err in refusing to submit requested issue number two because the issue regarding possession of the land was irrelevant once Bryan admitted responsibility for the stairs.

■ Requested issue number three, i.e., the condition of the steps prior to Hejl's lease, was not relevant to the issue of Bryan's negligence.

■ Requested issue number four asks the jurors whether Bryan made a diligent effort to repair the defective condition. According to Tex.R.Civ.P. 277, inferential rebuttal questions shall not be submitted in the charge. By inference, this issue rebuts a finding of negligence if the jury finds that Bryan made a diligent effort to repair the stairs. Thus, question number four was not proper.

Dockery argues that Bryan's right to have special instruction number three submitted was waived because, throughout the trial, testimony was introduced without objection, that Bryan was responsible for repairs to the garage apartment. It appears that Bryan should have objected to the testimony on repairs, and cited the case of *Yarbrough,* which held that the making of repairs is not an admission of a duty to repair.

In reviewing the special issues in favor of Bryan, the evidence establishes that the trial court did not abuse its discretion in refusing to submit the issues. Furthermore, the trial court's failure to instruct the jury on requested instruction number three, did not cause the rendition of an improper verdict.

Appellant's second point of error is overruled.

The judgment of the trial court is affirmed.