STAR HOUSTON, INC. d/b/a Star
Motor Cars, Appellant,

v.

Steve SHEVACK, Appellee.

No. 01–93–00440–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 8, 1994.

Rehearing Overruled Sept. 29, 1994.

Josh M. Harrison, Woodlands, for appellant.

William J. Robertson, Houston, for appellees.

Before MIRABAL, COHEN and HUTSON–DUNN, JJ.

## OPINION

MIRABAL, Justice.

Steve Shevack sued Star Houston, Inc. d/b/a Star Motor Cars (Star), alleging breach of contract, common-law fraud, and violation of the Texas Deceptive Trade Practices Act (DTPA), TEX.BUS. & COM.CODE ANN. §§ 17.41–17.63 (Vernon 1987 and Supp.1993), in connection with repair work Star performed on Shevack's automobile. Star counterclaimed for breach of contract, and also sought attorneys' fees and costs from Shevack under section 17.50(b) of the DTPA, asserting that his DTPA action was groundless and was brought in bad faith or for harassment. The trial court entered judgment, on a jury verdict, that Shevack recover from Star $4,776.47 in actual damages, $15,000 in exemplary damages, and $10,000 in attorneys' fees, as well as pre- and post-judgment interest, and additional attorneys' fees in the event of appellate proceedings; and that Star take nothing on its counterclaim. Star appeals, raising 17 points of error. We reform the judgment, and affirm.

One evening in 1989, Shevack was driving in his 1982 Mercedes 380SEL automobile on the Southwest Freeway in Houston, when his engine suddenly went completely dead. He and his companions pushed the car to a nearby gas station on the service road, and Shevack had it towed to a repair shop. The next morning, that shop told Shevack it appeared there was a serious problem with his car's timing chain; he told them not to do anything to the car, and called the factory representative at Mercedes North America (Mercedes). Shevack relayed the repair shop's assessment, and answered other questions asked of him. Mercedes told Shevack that if the trouble was indeed a timing chain problem, then Mercedes would pay half the bill. At Mercedes' suggestion, Shevack had the car towed to Star. Star took approximately 10 days to inspect Shevack's car, and communicated the results to Shevack in the following letter:

August 10, 1989

. . . .

Dear Mr. Shevack,

. . . .

The estimation on the repair of your 1982 380 SEL is as follows:

| PARTS | $9,619.66 (incl. tax) |
| LABOR | 3,020.00 |
| TOTAL ESTIMATE | $12,639.66 |

Please keep in mind this is just an estimate. As per our telephone conversation, Mercedes–Benz has agreed to pay 50% of the entire bill.

If you will simply sign the authorization at the bottom of the page and return to me as soon as possible, we can begin the repairs.

Sincerely,

STAR MOTOR CARS

/s/ Ken Clements

Ken Clements

Service Advisor

KC/cs

I AUTHORIZE STAR MOTOR CARS TO PERFORM REPAIRS TO MY CAR AS PER THE ESTIMATION.

/s/ Steve Shevack
Steve Shevack

After Shevack signed the letter and returned it to Star, Star began the repair work on his car. Five or six weeks later, Ken Clements called Shevack and told him the car would be ready the next day. When Shevack was given the bill, Mike Martini, Star's service manager, told Shevack that there were certain items on the bill that Mercedes would not pay for because they were normal wear and tear items, and that Star was charging those items one hundred percent to Shevack. The total bill was $12,-433. To get his car back, Shevack paid, under protest, $7,596.30 of that amount. This suit followed.

■ In its points of error one, two, three, and nine, Star complains of a number of the trial court's actions.[1] Star has waived one of those complaints,[2] and the remainder all rest on Star's assertion that there was no evidence to support the jury's answer to Shevack's jury question number two, that Star had committed a fraud which was a proximate cause of damages to Shevack.

■ In reviewing legal insufficiency or "no evidence" points, the reviewing court considers only the evidence and inferences that, when viewed in their most favorable light, tend to support the finding, and disregards all evidence and inferences to the contrary. *Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex.1988); *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987); *Alm v. Aluminum Co. of America,* 717 S.W.2d 588, 593 (Tex.1986); *King v. Bauer,* 688 S.W.2d 845, 846 (Tex.1985). If there is more than a scintilla [3] of evidence to support the finding, the "no evidence" point must be overruled and the finding upheld. *Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 242 (Tex.1988).

■ The elements of actionable fraud in Texas are (1) that a material representation was made; (2) that it was false; (3) that, when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; and (6) that the party thereby suffered injury. *Trenholm v. Ratcliff,* 646 S.W.2d 927, 930 (Tex.1983). The jury was so charged.

■ Shevack testified that Star represented to him that Mercedes would pay 50 percent of the entire bill for work Star did on his car. Clements' letter was admitted into evidence; the letter, and Shevack's signature on it, tend to show, respectively, Star's intention to induce Shevack to act upon that representation by giving Star a signed, written authorization to proceed with the repairs, and that Shevack did rely on that representation. Clements testified that at the time he wrote the letter, he knew that Mercedes was not going to pay for parts and labor that were not related to the timing chain. Clements also testified that Star performed certain additional repairs, not related to the timing chain and not considered in its August 10 letter, that Star decided were "needed," without getting prior permission from Shevack. Shevack testified that he paid more than half of the entire bill.

There was evidence of each element of fraud; that evidence was legally sufficient to support the jury's answer to jury question number two. We overrule points of error one, two, three, and nine.

---

1. Star asserts that the trial court erred (a) in denying Star's motion for instructed or directed verdict at the close of Shevack's evidence, (b) in overruling Star's no evidence objection to the submission of Shevack's jury question on fraud, in denying, (c) Star's motion to disregard the jury's answer to the fraud question, (d) Star's motion for judgment notwithstanding the verdict, and (e) Star's motion for new trial. Each of these rulings adequately presented Star's "no evidence" complaint to the trial court, for purposes of preserving it for appeal. *See Steves Sash & Door Co. v. Ceco Corp.,* 751 S.W.2d 473, 477 (Tex.1988) (enumerating these five ways to pre-serve a no evidence complaint). Star also asserts that the trial court erred (f) in awarding exemplary damages against Star in the judgment.

2. By presenting its own evidence after denial of its motion for instructed or directed verdict, Star waived its complaint about that ruling. *See Bryan v. Dockery,* 788 S.W.2d 447, 449 (Tex. App.—Houston [1st Dist.] 1990, no writ).

3. A "scintilla" of evidence does no more than create a mere surmise or suspicion of its existence. *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983).

In its points of error four, five, six, and eight, Star complains of the trial court's instruction, over Star's objection, that the jury consider mental anguish suffered by Steve Shevack, if any, as an element of Shevack's damages (along with the difference between the dollar amount Shevack was charged for the car repairs and the amount as represented or contracted for). Star raises other complaints in these points as well.[4] All of these points rest on the assertion that there was *no evidence* that Shevack suffered any mental anguish. In its point of error seven, Star asserts the trial court erred in admitting, over Star's objection, evidence offered by Shevack in support of his mental anguish claim.

Shevack first testified summarily that the problems with Star had caused him mental anguish, and elaborated as follows:

At the time I took the car in to be serviced, I had gone through some very bad times. I didn't want to bring it up.... I had been diagnosed with pancreatic—Counsel, I only have a few more months to go—I had gone through a severe financial problem and I had lost my business. My credit was already terrible. I had several judgments.

Counsel for Star objected at that point, that this testimony was irrelevant and unduly prejudicial. After the objection was overruled, Shevack continued:

I had lost my business and lost my house. Several banks were suing me. I had a tremendous amount of medical bills, unpaid medical bills; and then this happened at a time when I was just, you know, just another thing that was just hitting me. And it was nothing I could do. I had to borrow money from my sister to make repairs on the car. There was just no other place I could go and it was just a tremendous hardship at this particular time.

I thought the car would be ready in a week or so. I had to go rent a car and spend another $1700 for five weeks because they couldn't get the car out on time which was another expense I certainly didn't need. It was just adding insult to injury at this particular time.

Finally, Shevack also testified that the problem with Star had induced him to consult a doctor about his mental anguish.

 Just as with any physical injuries he causes another, a tortfeasor whose actions cause another to suffer mental anguish or emotional distress takes his plaintiff as he finds him. *Coates v. Whittington,* 758 S.W.2d 749, 752–53 (Tex.1988). Regardless of any special susceptibility on the injured party's part, that party is entitled to recover for the mental distress he proves the incident caused him, conditioned as he was at the time of the incident. *Id.* Shevack's testimony concerning his state of mind in his particular situation at the time of his contact with Star was relevant to his allegations of mental anguish.

 In Texas, a party may recover damages for mental anguish without having suffered any physical injury. *St. Elizabeth Hosp. v. Garrard,* 730 S.W.2d 649, 654 (Tex. 1987); *Cronin v. Bacon,* 837 S.W.2d 265, 269 (Tex.App.—Fort Worth 1992, writ denied). However, to recover damages for mental anguish, one must show more than mere worry, anxiety, vexation, embarrassment, or anger. *Phar–Mor, Inc. v. Chavira,* 853 S.W.2d 710, 712 (Tex.App.—Houston [1st Dist.] 1993, writ denied); *Elliott v. Dow,* 818 S.W.2d 222, 225 (Tex.App.—Houston [14th Dist.] 1991, no writ). Mental anguish is defined as a high degree of mental suffering, beyond disappointment, anger, resentment, or embarrassment, although it may include all of these. *Phar–Mor,* 853 S.W.2d at 712; *Cronin,* 837 S.W.2d at 269. The proof must show such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair, or public humiliation. *Phar–Mor,* 853 S.W.2d at 712; *Cronin,* 837 S.W.2d at 269. Jurors are best suited to determine whether

---

**4.** Star also asserts that the trial court erred in denying (a) Star's motion to disregard the jury's answer to that jury question (number six), (b) Star's motion for judgment notwithstanding the verdict, and (c) Star's motion for new trial. Star also asserts that the trial court erred (d) in awarding damages for mental anguish against Star in the judgment. The amount of mental anguish damages was approximately $3500.00.

and to what extent the defendant's conduct caused compensable mental anguish by referring to their own experience. *St. Elizabeth Hosp.*, 730 S.W.2d at 654.

The only evidence relevant to Shevack's allegations of mental anguish was Shevack's testimony, and the facts surrounding the repair work on Shevack's automobile. Star cites *Elliott*, *Cronin*, and other cases, in support of its contention that the evidence was legally insufficient.

In *Elliott*, Elliott had been injured in a motorcycle accident. The Fourteenth Court held that the evidence was factually sufficient to support a jury finding of zero damages for mental anguish, where Elliott had testified simply that following the accident, he was "upset" and "worried about the future." [5] The *Elliott* case is of little assistance in determining whether the proof in this case was *legally insufficient* to support a jury finding Shevack was entitled to recover damages for mental anguish. As for *Cronin*, there the plaintiff, Bacon, testified only that he was angry—"as angry as I have ever been." Clearly, that testimony, standing alone, showed no more than "mere worry, anxiety, vexation, embarrassment or anger."

Star's remaining cases are *Town East Ford Sales, Inc. v. Gray*, 730 S.W.2d 796 (Tex.App.—Dallas 1987, no writ) and *Roberts v. U.S. Home Corp.*, 694 S.W.2d 129 (Tex. App.—San Antonio 1985, no writ). In *Roberts*, the only evidence offered about mental anguish was Roberts' testimony that when U.S. Home rejected his loan application he was "mad," "embarrassed," and "felt like scum" because of the credit troubles he subsequently experienced with other prospective lenders; the San Antonio court held that evidence legally insufficient to support a recovery. 694 S.W.2d at 136. As in *Cronin*, that testimony showed anger, embarrassment, or vexation, but no more. In addition,

in *Roberts*, as in *Elliott*, there were also causation problems.[6] And finally, in *Town East*, the Dallas Court of Appeals held that there was no evidence of mental anguish, where Gray testified only that he "had been anguished and felt a continuing strain" from his dispute with Town East. 730 S.W.2d at 803.

In *Phar–Mor*, this court sustained a "no evidence" challenge to a jury finding that "the defendant's invasion of the plaintiffs' privacy proximately caused mental anguish to plaintiffs." *Phar–Mor* involved a five-minute entry into the plaintiffs' home by two Phar–Mor employees, at the invitation of and in the presence of the plaintiffs' adult son (also a Phar–Mor employee), who lived with the plaintiffs at the home. The plaintiffs were not at home at the time, and the neighbors were not aware of the visit. During the visit, six video tapes were taken from the plaintiffs' home. This court held there was no evidence the plaintiff husband suffered *any* damages, and the plaintiff wife's minimal discomfort from the incident did not rise to the level of mental anguish.

■ In contrast to the plaintiffs in *Phar–Mor, Elliott, Cronin, Town East and Roberts*, Shevack was a particularly vulnerable plaintiff. At the time of his troubles with Star, he had been diagnosed with a life-threatening pancreatic condition; he testified at trial he had only a few more months to live. Shevack had been recently successful in banking and real estate. However, at the time he took his car to be serviced at Star, he had lost his business and his house; several banks were suing him; he had several judgments against him; and he had a tremendous amount of unpaid medical bills. At this time of financial and medical distress, Star kept Shevack's car for about one and one-half months, when Shevack had thought the car would be ready in a week or so; as a result,

---

**5.** Too, Elliott testified that he had been in a motorcycle accident some 22 years before the one involving Dow, and another one afterward; he could not distinguish what part of the back pain that caused him to worry was caused by the most recent accident, and what part was caused by Dow. Concerning the prior accident, the court held the jury was entitled to conclude that Elliott had become somewhat accustomed to back pain, and that continued or aggravated pain following the accident with Dow did not cause Elliott mental distress sufficient to support a recovery.

**6.** Roberts offered no proof that any act of U.S. Home had induced anyone else to deny him credit. 694 S.W.2d at 136, 135.

Shevack had to pay $1700 for a rental car. And then, when the car was finally ready, Shevack found he was overcharged by about $1300. He did not have any money to pay this extra $3000 in expenses—he had to borrow the money from his sister. The fact that a person is placed in a position to have to seek assistance from a relative, at a time when he is faced with a short life expectancy, could be the source of emotional stress and mental anguish in the eyes of some people. Shevack testified directly that he suffered mental anguish and had consulted doctors about his mental anguish. The judge observed Shevack testify, and concluded the evidence presented more than a mere surmise or suspicion about whether Shevack had suffered such painful emotions as despair, wounded pride, or indignation as a result of Star's actions. The judge decided to let the jury decide.

The sufficiency of evidence to support a finding of mental anguish has been at issue in several other cases. Although none is precisely on all fours with the instant case, we find each instructive.

*Tidelands Auto. Club v. Walters*, 699 S.W.2d 939 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.), was a suit for intentional infliction of emotional distress. Mr. Walters' wife had been killed in an automobile accident, and he filed a claim to collect life insurance proceeds from Tidelands. The jury found that, before giving Mr. Walters a copy, Tidelands had altered a letter it received from a justice of the peace. The letter relayed the opinion of the regional crime laboratory that Mrs. Walters had *not* been intoxicated at the time of the accident; the jury found Tidelands had changed it to say, instead, that she *had* been intoxicated. 699 S.W.2d at 940. On appeal, Tidelands did not challenge that finding, but did contest the legal and factual sufficiency of the evidence that Mr. Walters suffered severe emotional distress as a result of the assertion in the altered letter. 699 S.W.2d at 941. Like Shevack, Mr. Walters was, at the time of the alleged tort, already distressed over events for which the defendant was not responsible; Walters' daughter testified that, because he was already upset over Mrs. Walters' death, she delayed telling him about the letter. She and he both testified about his severe emotional reaction when he learned of it: the letter "upset" him so much that he closed himself up alone in a room for several days and did not want to see or talk to anyone; it kept him from sleeping at night; it preoccupied him and kept him from concentrating; and made him ill, disoriented and angry. They both also testified that Mr. Walters—again, like Shevack—had felt bad enough that he had seen a doctor about that distress; Mr. Walters said that he hadn't really wanted to do so, but it " 'seemed to me I had to do something.' " The court held that evidence was both legally and factually sufficient to support the jury's finding that Mr. Walters had suffered severe emotional distress. 699 S.W.2d at 945.

Shevack's description of his emotional reaction to Star's acts was not as long or as detailed or vivid as the description of the plaintiff's reaction in *Tidelands*. However, the plaintiff's and other witnesses' demeanor, the emotion evident in their testimony, and the "gut feeling" they project to the jurors is one kind of proof of mental anguish that may be presented in a case, as well as evidence of what has taken place in a plaintiff's life as a result of a defendant's actions. *State Farm Mut. Auto Ins. Co. v. Zubiate*, 808 S.W.2d 590, 599–601 (Tex.App.—El Paso 1991, writ denied).

For instance, *Automobile Ins. Co. of Hartford v. Davila*, 805 S.W.2d 897 (Tex.App.—Corpus Christi 1991, writ denied), was an action for wrongful denial of insurance benefits following a fire in the upstairs portion of the Davilas' home. Despite a lack of any direct evidence of the Davilas' emotional states, such as testimony from either of them about outrage, anger, or other emotional pain or distress that the insurer's conduct provoked, the court held that there was legally and factually sufficient evidence that the insurer had caused them mental anguish. The court reasoned that the jury was entitled to infer that the Davilas suffered emotional distress from "the unrepaired condition of their home, their shortage of clothes and furniture," their living conditions, and testimony concerning friction between them after the

fire, which "indicated that [they] were emotional people who overreacted to stress[.]" 805 S.W.2d at 907. And in *Zubiate* itself, also involving an alleged wrongful denial of an insurance claim, the plaintiffs testified at some length about both their emotional reaction to the insurer's treatment of their claim, as well as the progression of the events themselves; the latter testimony weighed heavily in the court's conclusion that the evidence was sufficient to support the jury's award of $165,000 for mental anguish:

> In light of the facts and circumstances that were related to the jury during the trial by the Zubiates, it is apparent that the Zubiates satisfied the requirement that they must demonstrate more than mere worry, anxiety, vexation, embarrassment or anger. The jury did not have to base its decision solely on the witnesses' testimony and demeanor. The jury could also consider all the evidence as to what had taken place in the Zubiates' life as a result of the claim denial.

808 S.W.2d at 590.

Again, none of the foregoing cases is precisely on all fours with the instant case, and we do not consider any one or more of them dispositive of our decision here. There is no certain standard by which personal injury damages can be measured; each case must stand on its own facts and circumstances. However, we consider this case to be distinct from *Phar–Mor, Elliott, Cronin, Town East, Roberts,* and similar cases,[7] and more closely akin to *Tidelands, Zubiate,* and *Davila.* We hold that, in this instance, the evidence presented was legally sufficient to support the submission of a jury question on mental anguish damages. Further, we hold there was more than a scintilla of evidence (more than mere surmise or suspicion) to support the jury's finding of mental anguish and the award of mental anguish damages. Moreover, the evidence offered by Shevack was not unduly prejudicial; on the contrary, it was in the mainstream of the kind of evidence offered in similar cases, and had nei-

ther unusually low probative value nor unusually high potential for prejudicial effect.

We overrule points of error four through eight.

In point of error 11, Star contends that the trial court erred in awarding damages for breach of contract, fraud, and/or violations of the DTPA, because Star's August 10, 1989, letter was a mere estimate of the cost of repairs. We understand Star to assert that that letter was neither a contract to repair Shevack's car for a fixed price of $12,639.66, nor a sufficiently definite statement about the cost of repairs that it could, if false, constitute an actionable misrepresentation of the cost of repairs. Shevack's claim for damages, however, was not founded upon any variance between the $12,639.66 figure and the actual cost of repairing his automobile, but rather, upon Star's unqualified, positive assertion in the letter that "Mercedes–Benz has agreed to pay 50% of the entire bill." That assertion was actionable.

We overrule point of error 11.

Points of error 13 and 14 raise complaints about the trial court's final judgment that were subsequently mooted when the errors assigned were corrected in a judgment nunc pro tunc. We overrule points of error 13 and 14.

In point of error 15, Star complains that the trial court erred in allowing Shevack to testify regarding the maintenance of his vehicle, since Shevack never produced his service records and owner's manual in response to Star's discovery requests. No authority is cited in support of point of error 15. The point is therefore waived. Tex. R.App.P. 74(f). In any event, whether Shevack had properly maintained his vehicle prior to the timing chain failure is not relevant to any of his claims against Star; those claims do not concern the timing chain failure, but rather, a subsequent event—Star's misrepresentation—that could not have been caused by, and had nothing to do with, any failure on Shevack's part to maintain his

7. *E.g., North Star Dodge Sales, Inc. v. Luna,* 653 S.W.2d 892 (Tex.App.—San Antonio 1983), *aff'd in part and rev'd in part,* 667 S.W.2d 115 (Tex. 1984), where, unlike here, the plaintiff was asked on cross-examination, "We have worry, anger, nervousness, anxiety, frustration. What else, or does that cover it?" and replied, "I guess that is about it."

vehicle properly. Error, if any, in allowing Shevack to testify to the matter was not reasonably calculated to cause an improper judgment in this case. TEX.R.APP.P. 81(b)(1).

We overrule point of error 15.

In point of error 16, Star contends that the trial court erred in overruling its objection that Shevack's testimony concerning unrelated lawsuits against him was irrelevant, and in denying Star's motion for mistrial.

Shevack testified that at the time of his dealings with Star, he had several banks suing him and had judgments against him for a debt on bank stocks that he was unable to pay at that time. This testimony, like his earlier testimony described above in connection with point of error seven, was probative of Shevack's condition at the time, and was relevant to his allegations of mental anguish. The trial court did not err in overruling Star's objection.[8]

Shevack testified that Star's trial counsel, Mr. Harrison, had obtained one of the earlier judgments against Shevack, for a client. On cross-examination, Shevack referred to that fact when he said to Star's counsel, "I think what you did is as sleazy as you can get." The trial court sustained Star's objection to the non-responsive answer and denied Star's motion for mistrial. The trial court then *sua sponte* instructed the jury not to consider Shevack's remark for any purpose. In the absence of some contrary indication, we must presume that the jury obeyed that instruction. *Walker v. Texas Employers' Ins. Ass'n*, 155 Tex. 617, 291 S.W.2d 298, 300 (1956). Star has not argued that any circumstance apparent in the record rebuts that presumption, and, independently, we find none.

We overrule point of error 16.

In point of error 10, Star asserts that the trial court erred in awarding both attorneys' fees and exemplary damages in the judgment, over its double recovery objection, raised in its motion to disregard jury findings and in its motion for new trial. In point of error 17, Star complains about the award of appellate attorneys' fees.

Shevack sued Star for breach of contract, common-law fraud, and violation of the DTPA. Neither Shevack's cause of action for breach of contract nor his cause of action for common-law fraud entitled Shevack to obtain both a recovery of attorneys' fees and a separate award of exemplary damages.[9] Additionally, in this instance Shevack's DTPA cause of action will not support a recovery for both attorneys' fees and exemplary damages because, in answer to question five, the jurors refused to find that Star had "knowingly" engaged in any of the deceptive trade practices they found in response to previous questions. *See* TEX.BUS. & COM.CODE ANN. § 17.50(b)(1) (Vernon Supp. 1994); *see also Jeep Eagle Sales v. Mack Massey Motors*, 814 S.W.2d 167, 175 (Tex. App.—El Paso 1991, writ denied) (showing that defendant acted "knowingly" required for jury to assess punitive damages under DTPA).

A party who seeks redress under two or more theories of recovery for a single wrong must elect, before the judgment is rendered, under which remedy he wishes the court to enter judgment. *American Baler Co. v. SRS Sys., Inc.*, 748 S.W.2d 243, 246 (Tex.App.—Houston [1st Dist.] 1988, writ denied); *Thate v. Texas & Pacific Ry. Co.*, 595 S.W.2d 591, 595 (Tex.Civ.App.—Dallas 1980, writ dism'd). Where a prevailing party fails to make that election, the trial court should utilize the findings affording the greater recovery and render judgment accordingly.

---

8. On appeal, Star also contends that the trial court should have excluded this same evidence under TEX.R.CIV.EVID. 403, on the grounds that, though relevant, it was unduly prejudicial to Star. Star did not object on that basis in the trial court. This complaint presents nothing for review; objections made on appeal that do not conform to those made at trial are waived. *Texaco, Inc. v. Pennzoil Co.*, 729 S.W.2d 768, 819 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd

n.r.e.), *cert. dism'd*, 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988); TEX.R.APP.P. 52(a).

9. *See Texas Nat'l Bank v. Karnes*, 717 S.W.2d 901, 903 (Tex.1986) (exemplary damages not recoverable for breach of contract, absent an independent tort); *Kilgore Fed. Sav. and Loan Ass'n v. Donnelly*, 624 S.W.2d 933, 938 (Tex.App.1981) (in fraud cases, attorneys' fees are not recoverable separately from exemplary damages).

*Birchfield v. Texarkana Memorial Hosp.,* 747 S.W.2d 361, 367 (Tex.1987); *American Baler Co.,* 748 S.W.2d at 246. Where the trial court fails to do so, the appellate court will reform the trial court's judgment to effect such an election. *Stevenson v. Koutzarov,* 795 S.W.2d 313, 322 (Tex.App.—Houston [1st Dist.] 1990, writ denied); *American Baler Co.,* 748 S.W.2d at 246, 250.

The jury found, and the trial court awarded, exemplary damages of $15,000. The jury found, and the trial court awarded, reasonable attorneys' fees in the following amounts: $10,000 through trial and judgment; $5,000 in the event of an appeal to the court of appeals; $2,500 in the event of the filing of an application for writ of error to the Texas Supreme Court; and $2,500 if the application for writ of error is granted by the Texas Supreme Court.

■■■ The award of *appellate* attorneys fees to Shevack is necessarily *conditional* on Shevack's success on appeal.[10] *Sipco Serv. Marine v. Wyatt Field Serv. Co.,* 857 S.W.2d 602, 607–608 (Tex.App.—Houston [1st Dist.] 1993, no writ.). Because the unconditional exemplary damage award of $15,000 is larger than the unconditional award of $10,000 in attorneys' fees through the date of judgment, we conclude the cause of action awarding the greater recovery is the common-law fraud cause of action under which Shevack is entitled to $4,776.47 in actual damages and $15,000 in exemplary damages. Because, under the common-law fraud cause of action, attorneys' fees are not recoverable separately from exemplary damages, we sustain Star's points of error 10 and 17. In light of our sustaining these points, it is unnecessary for us to consider point of error 12, and we decline to do so.

We reform the judgment to delete any award for attorneys' fees, and we affirm the judgment in all other respects.

O'CONNOR, J., requested a vote to determine if the case should be heard en banc, pursuant to Tex.R.App.P. 79(d), (e) and Tex.R.App.P. 90(e).

OLIVER–PARROTT, C.J., and DUGGAN, COHEN, DUNN and MIRABAL, JJ., voted against en banc consideration.

ANDELL, J., did not participate.

O'CONNOR, J., dissented from the denial of en banc consideration and filed an opinion in which WILSON and HEDGES, JJ., join.

O'CONNOR, Justice, dissenting.

I dissent from this Court's denial of a motion for en banc hearing of points of error four, five, six, and eight, regarding mental anguish damages. I do not believe there is any evidence that Steve Shevack suffered mental anguish damages.

The panel's statement of the evidence on damages is correct. I reproduce the same testimony to make a distinction between Shevack's testimony about his mental anguish caused by the tort (italicized) from Shevack's testimony about his condition immediately before the tort (non-italicized). On direct examination Shevack testified as follows:

Q: Is there any other damages that you have sustained as a result of this?

A: *Yes.*

Q: What are those?

A: *Mental anguish.*

Q: And what mental anguish have you suffered?

A: At the time I took the car in to be serviced, I had gone through some very bad times. I didn't want to bring it up. I don't know why counsel did.

I had been diagnosed with pancreatic— Counsel, I only have a few more months to go—I had gone through a severe financial problem and I had lost my business. My

---

**10.** Further, the entitlement to attorneys' fees *on appeal*—like the entitlement to attorneys' fees through trial—depends on whether attorneys' fees are an element of the damages recoverable under the applicable theory of recovery. Attorneys' fees are recoverable: (1) when a statute authorizes recovery of attorneys' fees for a particular type of action or proceeding, *O'Connell v.*

*Hitt,* 730 S.W.2d 16, 17–18 (Tex.App.—Corpus Christi 1987, no writ); (2) when a contract between the parties authorizes the recovery of attorneys' fees, *id.;* and (3) when attorneys' fees are recoverable under equitable principles, *Baja Energy, Inc. v. Ball,* 669 S.W.2d 836, 838 (Tex. App.—Eastland 1984, no writ). *See also* 1A Dorsaneo, *Texas Litigation Guide* § 22.01 (1994).

credit was already terrible. I had several judgments.

[Objection by defense lawyer—Star did not cause any of this, and it is irrelevant and unduly prejudicial to Star. Court overruled objection.]

\* \* \* \* \* \*

Q: Continue, Mr. Shevack.

A: I had lost my business and lost my house. Several banks were suing me. I had a tremendous amount of medical bills, unpaid medical bills; *and then this happened at a time when I was just, you know, just another thing that was just hitting me. And it was nothing I could do. I had to borrow money from my sister to make repairs on the car. There was just no other place I could go and it was just a tremendous hardship at this particular time.*

*I thought the car would be ready in a week or so. I had to go rent a car and spend another $1700 for five weeks because they couldn't get the car out on time which was another expense I certainly didn't need.*

*It was just adding insult to injury at this particular time.*

Q: Now, have you consulted any doctors regarding your mental anguish?

A: *Yes.*

[Objections and court's ruling]

Q: Who did you consult:

A: *My doctor at M.D. Anderson.*

Q: And did you consult him about this particular problem?

[Objections and court's ruling]

Court: And you may answer the question.

A: *Yes.*

(Emphasis added.)

This is all the evidence offered on the issue of Shevack's mental anguish damages. There is nothing else in the record about it.

As the panel states, a tortfeasor takes a plaintiff as he finds him. *Coates v. Whittington,* 758 S.W.2d 749, 752–53 (Tex.1988). The panel's point is that Shevack was a particularly vulnerable plaintiff. Even in such a case, the plaintiff is entitled to recover only for the mental distress he proves was caused by the incident, not for his condition as it existed before the tort. To recover damages for mental anguish, Shevack was required to show more than mere worry, anxiety, vexation, embarrassment, or anger. *See Phar-Mor, Inc. v. Chavira,* 853 S.W.2d 710, 712 (Tex.App.—Houston [1st Dist.] 1993, writ denied). Shevack was required to prove painful emotions, such as grief, severe disappointment, indignation, wounded pride, shame, despair, or public humiliation. *Id.* at 712.

The portion of Shevack's testimony that is not italicized does not address Shevack's mental anguish caused by the tort. It only addresses his condition at the time of the tort. The portion of Shevack's testimony that is italicized is the only evidence about mental anguish caused by the tort. There is no testimony in this record about Shevack's state of mind *after the incident on which this suit is based.*

The panel analyzes a number of cases (dwelling more on the tort than the emotional damages) and decides that the quality of Shevack's testimony on mental anguish damages is at least as good as that in *Phar-Mor, Inc.,* 853 S.W.2d at 712; *State Farm Mut. Auto Ins. Co. v. Zubiate,* 808 S.W.2d 590, 599–601 (Tex.App.—El Paso 1991, writ denied), *Automobile Ins. Co. of Hartford v. Davila,* 805 S.W.2d 897, 907 (Tex.App.—Corpus Christi 1991, writ denied), and *Tidelands Auto. Club v. Walters,* 699 S.W.2d 939, 945 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.).

Of the cases cited by the panel, the only one that supports its opinion is *Davila.* In *Davila,* the Corpus Christi Court of Appeals held that even though neither of the plaintiff's testified about their emotional condition, the jury was entitled to infer the plaintiffs suffered emotional distress from the unrepaired condition of their home, their shortage of clothes and furniture, their living conditions, and testimony concerning friction between them after the fire, which indicated that they were emotional people who overreacted to stress. 805 S.W.2d at 907–8. I respectfully disagree with the *Davila* opinion. I do not think a court may infer emotional damages from the injury itself.

Although the panel cites *Phar-Mor*, that opinion does not support the panel's opinion. In *Phar-Mor*, this Court reversed mental anguish damages because we found no evidence to support them. In that case, Mrs. Chavira's husband testified his wife had headaches, was nervous, and could not sleep. Mrs. Chavira testified that "it had been rough on" her. She said she was nervous and upset. We said that Mrs. Chavira suffered only minimal discomfort from the incident; nothing that would rise to the level of grief, severe disappointment, indignation, wounded pride, shame, despair, or public humiliation. 853 S.W.2d at 713. In this case, even through Shevack was a more vulnerable plaintiff, Shevack's proof was not as strong as that offered by the plaintiff in *Phar-Mor*, which we rejected as insufficient.

In the other opinions on which the panel relies, the plaintiffs offered far more testimony on emotional damages than did Shevack. *See Tidelands Auto. Club*, 699 S.W.2d at 945 (plaintiff testified he was so upset he closed himself up alone in a room for several days and did not want to see or talk to anyone; he could not sleep; he was preoccupied by the false report and could not concentrate; and became ill, disoriented and angry); *State Farm Mut. Auto Ins. Co.*, 808 S.W.2d at 599–601 (plaintiffs testified at length about their emotional reaction to the insurer's treatment of their claims).

The panel distinguishes four other cases, unsuccessfully, I think. In those cases, the courts held that a plaintiff seeking mental anguish damages had to prove more than Shevack offered in this case. *See Cronin v. Bacon*, 837 S.W.2d 265, 269 (Tex.App.—Fort Worth 1992, writ denied) (plaintiff testified he was angry, which was not enough for mental anguish damages); *Elliott v. Dow*, 818 S.W.2d 222, 224–25 (Tex.App.—Houston [14th Dist.] 1991, no writ) (plaintiff testified he was upset and worried about the future, which was not enough for mental anguish damages); *Town East Ford Sales, Inc. v. Gray*, 730 S.W.2d 796, 803 (Tex.App.—Dallas 1987, no writ) (plaintiff testified he was anguished and felt a continuing strain, which was not enough for mental anguish damages); *Roberts v. U.S. Home Corp.*, 694 S.W.2d 129, 136 (Tex.App.—San Antonio 1985, no writ) (plaintiff testified he was mad, embarrassed, and "felt like scum," which was not enough for mental anguish damages); *North Star Dodge Sales, Inc. v. Luna*, 653 S.W.2d 892, 897 (Tex.App.—San Antonio 1983), *aff'd in part and rev'd in part*, 667 S.W.2d 115 (Tex.1984) (plaintiff admitted she was nervous, anxious, frustrated, depressed, and angry, which was not enough for mental anguish damages).

Based on this Court's opinion in *Phar-Mor*, as well as the analysis in *Cronin, Elliott, Town East Ford Sales, Inc., Roberts*, and *North Star Dodge Sales, Inc.*, I would sustain points of error four, five, six, and eight.

WILSON and HEDGES, JJ., join this dissent.