**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 01-50133
_____


CRA SYSTEMS, INC.,

                                        Plaintiff-Appellee,

                    versus


FOCUS ENHANCEMENTS, INC.,

                                        Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas - Waco Division
(W-99-CA-031)
_____

January 3, 2002
Before DUHÉ, WIENER, and BARKSDALE, Circuit Judges.

PER CURIAM[*]:

Focus Enhancements, Inc. ("Focus") appeals the monetary award approved by the district court following the jury verdict in favor of CRA Systems, Inc. ("CRA") in the suit by CRA against Focus for, inter alia, fraud and breach of contract. Focus seeks a remittitur of actual damages, a proportionate reduction of punitive damages, and a reversal of the attorneys' fees and costs awards in favor of

---

[*] Pursuant to 5TH Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH Cir. R. 47.5.4.

1

CRA.  We affirm the award of compensatory and punitive damages, as well as the award of attorneys' fees, but we vacate and remand for a revision of the costs calculation consistent with this opinion.

**I.**

**FACTS AND PROCEEDINGS**

Focus, a public company trading on the NASDAQ stock exchange, designs and distributes video and ethernet cards for computers. Apple Computers ("Apple") contracted with Focus to manufacture video expansion cards (the "cards") for Apple's laptop computers. Focus had produced more than 16,000 cards when Apple, because of a mechanical defect, began recalling the laptops for which the cards were designed.  Focus contemplated writing off the entire inventory of cards, valued at approximately $2 million, as a loss.  If its financial reports were to reflect such a loss, however, Focus could not have remained listed on the NASDAQ exchange.  In an effort to avoid reporting the loss and losing its NASDAQ listing, Focus contacted CRA, a company that specializes in the liquidation of "end-of-line" computer hardware and outdated Apple products in particular.  Focus proposed to consign its entire inventory of cards to CRA for resale —— meanwhile, however, Focus booked the transaction as a sale to CRA rather than as a consignment.

During the negotiations with CRA, Focus made the following representations: (1) The cards should sell for $299 to $399 a piece; (2) Focus would give CRA a 50% margin on all sales; (3)

Focus would ship its entire inventory of approximately 12,000 cards to CRA; (4) CRA would have the exclusive right to sell the cards, in connection with which Focus promised to refer all inquiries from prospective buyers to CRA; (5) Focus had a marketing relationship with Apple that would facilitate sales; (6) Focus would be responsible for marketing and demand generation, including a specific promise to insert a sales flyer into every reissued Apple laptop to be shipped; and (7) Focus promised that CRA would have the right to exchange the cards inventory for other Focus inventory at no cost. CRA, after reviewing these representations, issued a purchase order for $1.8 million to Focus and, in return, Focus shipped the inventory, purportedly consisting of approximately 12,000 cards, to CRA. Focus, although it never realized any actual profit from the transaction, recorded the transaction as a sale to CRA that produced a profit of $1.2 million, thereby retaining its listing on the NASDAQ exchange.

CRA was unable to sell the cards as quickly as Focus had suggested; during the first six months following the transaction, CRA sold only 300 cards. Moreover, CRA discovered that Focus had not shipped the entire inventory of cards; in fact, Focus was selling the cards it retained directly to customers in blatant violation of the exclusivity provision for which CRA had bargained. Even worse, Focus occasionally sold the retained cards for less than CRA's price, not only competing with CRA but also creating buyer animosity toward CRA for apparent over-charging. In

3

addition, Focus failed to follow through on its promised advertising program and did not have a special marketing agreement with Apple as Focus had represented during the negotiations.

Concerned that simply allowing CRA to return the cards would again create a loss, Focus entered into an agreement with ITEX, a company that served as a clearinghouse for the bartering of goods and services between member companies. Following instructions from ITEX, Focus demanded that CRA deliver the cards to Goodwill, which CRA did.

CRA sued Focus in Texas state court, alleging violations of the Texas Deceptive Trade Practices Act, fraud, breach of contract, and negligent misrepresentation. Focus removed the case to federal district court based on diversity of citizenship. The parties consented to have a United States magistrate judge preside over the case, which was tried to a jury. On the fraud, breach of contract, and negligent misrepresentation claims, the jury found in favor of CRA. Based on the jury's verdict, the court awarded CRA actual damages of $848,000, punitive damages of $1,000,000, attorneys' fees, and costs. The court amended its judgment with regard to the post-judgment interest rate but denied Focus's request for remittitur or a new trial. Focus timely appealed.

II.

ANALYSIS

A. **Standard of Review**

4

We review the trial court's ruling on motions for remittitur or a new trial for abuse of discretion.[1] The trial court does not abuse its discretion by denying a motion for new trial or remittitur unless there is a complete absence of evidence to support the verdict.[2] Similarly, we review the trial court's decision to award costs for abuse of discretion.[3]

## B. Remittitur

Focus does not challenge its liability; rather it appeals the amount of actual damages awarded by the jury and approved by the trial court. Jury damage awards should only be overturned on a motion for remittitur when the liable party makes a "clear showing of excessiveness or upon a showing that [the jury was] influenced by passion or prejudice."[4] A clearly excessive award is one that is "contrary to right reason" or "entirely disproportionate to the injury sustained."[5] As a reviewing court, we give even greater

---

[1] Esposito v. Davis, 47 F.3d 164, 167 (5th Cir. 1995) (citing Stokes v. Georgia-Pacific Corp., 894 F.2d 764 (5th Cir. 1990)).

[2] Id.

[3] Cypress-Fairbanks Indep. Sch. Dist. v. Michael F., 118 F.3d 245, 256 (5th Cir. 1997) ("We generally review a decision of the district court to award costs for abuse of discretion.").

[4] Westbrook v. General Tire and Rubber Co., 754 F.2d 1233, 1241 (5th Cir. 1985) (citations omitted).

[5] Eiland v. Westinghouse Electric Corp., 58 F.3d 176, 183 (5th Cir. 1995) (citations omitted) (internal quotations omitted).

deference to the trial court when it denies the motion for remittitur and leaves the jury verdict intact.[6]

Here, the trial court carefully and thoroughly instructed the jury on the requirements for establishing Focus's liability and determining any damage award for CRA's "out-of-pocket" and "benefit-of-the-bargain" losses. Our review of the record confirms that the award falls within the limits of the jury instructions. The record evinces support for the jury's conclusion that (1) a viable market for the cards existed, (2) Focus undermined CRA by retaining some of the cards and selling them at lower prices than CRA, and (3) Focus failed to market the cards as promised, and CRA's reliance on Focus's promises to market the cards caused CRA not to advertise for itself as it might otherwise have done. From this evidence, a jury could reasonably conclude that CRA might have successfully sold the inventory of cards at the prices Focus represented.

Thus, Focus's arguments fall well short of a clear showing of excessiveness. The jury's verdict was neither "contrary to right reason" nor "entirely disproportionate to the injury sustained." Under our extremely deferential standard of review, we perceive no abuse of discretion in the trial court's decision to deny

---

[6] Westbrook, 754 F.2d at 1241 (citations omitted).

6

remittitur and allow the jury's damage award to stand.

Focus also argues that if actual damages are reduced by remittitur, then the punitive damage award should be proportionately reduced as well. As we affirm the trial court's denial of Focus's motion for remittitur and sustain the jury's quantification of damages, we need not address this argument.

## C. **Award of Attorneys' Fees and Exemplary Damages**

Focus next contends that the trial court erred by granting both attorneys' fees and exemplary damages to CRA. Under Texas law, exemplary damages are not recoverable for a breach of contract claim absent an independent tort,[7] and in fraud cases, attorneys' fees are not recoverable separately from exemplary damages.[8] Focus argues that by awarding CRA attorneys' fees and exemplary damages, the trial court allowed CRA to reap the benefit of both its contract and tort claims even though both claims arose out of the same transaction or set of events. This, Focus asserts, is an impermissible double recovery, and CRA must choose the liability theory under which it can recover damages. Focus insists that, when this is done, CRA can only receive either exemplary damages or

---

[7] Star Houston, Inc. v. Shevack, 886 S.W.2d 414, 422 (Tex. App. - Houston 1994, writ denied) (citing Texas Nat'l Bank v. Karnes, 717 S.W.2d 901, 903 (Tex. 1986)).

[8] Id. (citing Kilgore Fed. Sav. And Loan Ass'n v. Donnelly, 624 S.W.2d 933, 938 (Tex. Civ. App. - Tyler 1981, writ ref'd n.r.e.)).

attorneys' fees, depending on the chosen theory, but not both.

We are unconvinced that the instant case falls into the category of those in which the prevailing party must elect between contract and tort remedies.[9]  Here, Focus breached its contract with CRA, but also committed the independent tort of fraudulently misrepresenting facts to CRA and inducing CRA to enter into an agreement.  Thus, even without Focus's eventual breach of contract, a cause of action sounding in tort accrued to CRA.  Conversely, even if Focus had not misrepresented material facts to CRA before the signing of the contract, its egregious violation of the terms of the agreement gave rise to a contract claim.  Therefore, Focus's fraud in this case constitutes an independent tort, separate from its breach of contract.  In response to a special interrogatory on the fraud claim, the jury found, by a showing of clear and convincing evidence, that Focus had acted with malice toward CRA.

In such a situation, a Texas appellate court in Artripe v. Hughes allowed the recovery of both attorneys' fees and exemplary damages:

An award of attorneys' fees for breach of contract does

---

[9]  See Star Houston, 886 S.W.2d at 423 (disallowing the award of attorneys' fees, reasoning that a party seeking redress under multiple theories of recovery for a single wrong must, before judgment, elect the remedy under which the court will enter judgment).  In the instant case, Focus committed multiple wrongs and hence the different theories of recovery apply to separate violations within the same general set of events.

not preclude an award of exemplary damages for egregious tortious conduct in the same action.
...
Fraudulent misrepresentations used to induce the creation of a contract, coupled with damages caused by the misrepresentation, will support an award for exemplary damages.
...
Artripe fraudulently induced Hughes to enter into a contract by misrepresenting the financial condition of the business. He then breached that contract by failing to comply with its terms. The trial court properly awarded both attorneys' fees and exemplary damages to Hughes against Artripe.[10]

The facts of the instant case are more analogous to <u>Artripe</u> than to the facts of the cases cited by Focus to support the opposite position. Accordingly, we conclude that the district court did not abuse its discretion when it awarded both exemplary damages and attorneys' fees.

**D. Costs**

Focus's final contention is that the court improperly awarded, as costs, $23,853.03 in "non-taxable expenses." Although Texas law governs the substantive contract and tort claims, the award of costs is generally governed by federal law.[11] Hence, in this diversity action, Fed. R. Civ. P. 54(d) and 28 U.S.C. §§ 1920 and

---

[10] <u>Artripe v. Hughes</u>, 857 S.W.2d 82, 87 (Tex. App. — Corpus Christi 1993, writ denied) (affirming grant of exemplary damages and attorneys' fees).

[11] See <u>Carter v. General Motors Corp.</u>, 983 F.2d 40, 43-44 (5th Cir. 1993) (award of costs in a diversity action considered under Fed. R. Civ. P. 54(d) rather than Texas law).

1821 apply.  Rule 54(d) allows for the awarding of costs to the prevailing party and § 1920 details the type of costs that may be assessed when a Rule 54(d) motion is filed.  Specifically, § 1920 allows the district court to award, inter alia, (1) fees and disbursements for witnesses and (2) compensation of court appointed experts.  Section 1821(b) further clarifies that witnesses are to be compensated only $40 per day plus reimbursement for their subsistence lodging and travel time.

In the instant case, the trial court awarded $17,593.46 to CRA for expert witnesses fees.[12]  The record does not indicate, however, that the expert witnesses for whom these costs were assessed were

---

[12]  In addition to the line-item specification of $17,593.46 as "Expert Witness Fees," the district court assessed $6259.57 for all other "non-taxable expenses."  Specifically, the court allowed $173.70 for "Computed Assisted Research," $1,180.02 for "Travel to Massachusetts for Defendant's Depositions, plus Hotels and Meals," $186.19 for "Trial Exhibits," $150.00 for "Service of Subpoena for Depositions Upon Written Questions," $250.00 for "Court Reporter's Appearance Fees," $2053.19 for "Videotape Services," $315.00 for "Deposition Exhibits," $149.60 for "Deposition Transcript," $10.00 for "Court Reporter's Obtaining Signature of Witness," $1,417.00 for "Photocopying Expenses," $139.30 for "Telephone and Telecopier Expenses," and $235.57 for "Postage, Express Mail, UPS."  Without individually addressing each one, suffice it that we perceive no abuse of discretion in the district court's award with regard to these costs.  See Crawford Fitting Co. v. J.T. Gibbons, Inc., 760 F.2d 613 (5th Cir. 1985) (affirming the district court's award of costs for, inter alia, photocopying, travel, and deposition expenses under abuse of discretion standard, but denying expert witness fees in excess of maximum set by § 1821), reh'g en banc, 790 F.2d 1193 (5th Cir. 1986) (reinstating the relevant sections of the panel opinion and reaching the same result), aff'd and remanded, 482 U.S. 437 (1987).

court appointed.  In the absence of a showing that the experts were court appointed, the limit on witness fees imposed by § 1821(b) cabins the cost assessment.[13]  The trial court does not explain how or why the $17,593.46 expert witness cost was reached.  Given the absence of either evidence to show that the experts were court appointed or an explanation of how the trial court arrived at this figure, we must remand this issue to the trial court for the limited purpose of having it calculate the proper witness costs under the guidance of §§ 1821 and 1920.

### III.

### CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court in all respects except for the amount of its award of expert witness fees, which we vacate and remand for revision consistent with the applicable federal statutory provisions.

AFFIRMED in part; VACATED and REMANDED in part.

---

[13]  See Crawford Fitting Co., 482 U.S. 437, 442 (1987) ("We think that the inescapable effect of these sections [1821 and 1920] in combination is that a federal court may tax expert witness fees in excess of the $30-per-day [now $40 per day] limit set out in § 1821(b) only when the witness is court-appointed.").