In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-02-00180-CV
______________________________


1986 DODGE 150 PICKUP
VIN #1B7FD14T1GS006316, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 102nd Judicial District Court
Red River County, Texas
Trial Court No. 002-CV-00369


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

Â Â Â Â Â Â Â Â Â Â Joe B. Queen appeals the judgment of the trial court forfeiting his 1986 Dodge
pickup truck to the State of Texas. He contends the trial court erred by not granting his
motion for directed verdict because the search leading to the seizure of his pickup truck
violated his constitutional right prohibiting unreasonable searches and seizures under
Article 1, Section 9, of the Texas Constitution and the Fourth Amendment to the United
States Constitution.



Â Â Â Â Â Â Â Â Â Â On January 4, 2002, police officers executed a search warrant for the residence of
Sam Black, including any and all outbuildings and motor vehicles located on the property. 
During the execution of the search warrant, officers Danny Powell and Terry Bee observed
Queen drive into the yard of Black's residence. The officers removed Queen from the
vehicle and informed him they were police officers, that they were executing a search
warrant on the premises, and that his truck was subject to search under the warrant. 
Powell asked Queen whether he had any drugs or other contraband in his vehicle. Queen
replied, "probably." A search of the vehicle revealed three plastic bags containing "white
residue."
Â Â Â Â Â Â Â Â Â Â Powell testified he field-tested this substance, and it tested positive for
methamphetamine. Bee read Queen his Miranda


 rights and asked him why he was there. 
Queen stated he was there to get methamphetamine from Black. The State brought this
action to forfeit Queen's truck.



Â Â Â Â Â Â Â Â Â Â The trial of this matter commenced before the court October 16, 2002. The State
presented Powell's testimony and then stated it had no further witnesses. Queen moved
for a directed verdict on the ground that the search of his vehicle was not based on
probable cause and violated his constitutional right to be free from unreasonable searches
and seizures. The trial court denied the motion, and Queen presented a witness on his
behalf. The trial court then sue sponte put "this case in recess" and, "in the interest of
justice," kept the record open for receipt of testimony concerning the Texas Department
of Public Safety (DPS) laboratory test results. While Queen objected to this procedure, he
makes no complaint about it on appeal.
Â Â Â Â Â Â Â Â Â Â On November 14, 2002, at the trial court's urging, the State moved to reopen the
case for receipt of the testimony concerning the laboratory test results. Karen Ream, a
criminologist with the DPS, testified the bags found in Queen's truck contained .16 grams
of methamphetamine. The trial court found that the 1986 Dodge pickup truck was
contraband and subject to forfeiture. The court filed findings of fact and conclusions of law,
and concluded "[t]he State proved by a preponderance of the evidence" that the seized
vehicle "was contraband as defined by Art. 59.01(2)(B)(i) in that it was used in commission
of a felony under Chap. 481.115 of the Texas Health and Safety Code." The court also
found the seizure of Queen's truck was incident to a lawful search.
Â Â Â Â Â Â Â Â Â Â Queen's sole point of error is the trial court erred by not granting his motion for
directed verdict based on his contention the search of his vehicle was not based on
probable cause and violated his constitutional right to be free from unreasonable searches
and seizures. In order for an issue to be preserved on appeal, there must be a timely
objection which specifically states the legal basis for the objection. Rezac v. State, 782
S.W.2d 869, 870 (Tex. Crim. App. 1990); Zillender v. State, 557 S.W.2d 515, 517 (Tex.
Crim. App. 1977). An objection stating one legal basis may not be used to support a
different legal theory on appeal. Zillender, 557 S.W.2d at 517. A failure to object can even
waive an error involving constitutional rights, and the rule that the error presented on
appeal must be the same objection raised at trial applies with equal force to constitutional
violations. Little v. State, 758 S.W.2d 551, 564â65 (Tex. Crim. App. 1988); Gauldin v.
State, 683 S.W.2d 411, 413 (Tex. Crim. App. 1984), overruled on other grounds, State v.
Guzman, 959 S.W.2d 631 (Tex. Crim. App. 1998); Russell v. State, 665 S.W.2d 771,
777â78 (Tex. Crim. App. 1983).
Â Â Â Â Â Â Â Â Â Â Queen's only objection to Powell's testimony concerning his field test of the
substance found in Queen's truck was that the officer had not been qualified as an expert
to so testify. When the substance itself was later offered into evidence, Queen's only
objections were based on hearsay and failure to prove the chain of custody. He later
objected to the procedures followed by the chemist. These objections were overruled, and
Queen does not complain of these rulings on appeal. The only objection to the
methamphetamine as the product of an illegal search came during Queen's motion for
directed verdict. An objection lodged for the first time in a motion for directed verdict
presents nothing for review. Stubblefield v. State, 477 S.W.2d 566, 568 (Tex. Crim. App.
1972). Having failed to object on this basis when the evidence was offered, no error is
presented for appellate review. See $4,182.00 in United States Currency v. State, 944
S.W.2d 24, 27 (Tex. App.âTexarkana 1997, no writ).
Â Â Â Â Â Â Â Â Â Â Even if Queen's motion for directed verdict had been sufficient to preserve his
claimed constitutional error, he waived any such error in another way. If a party proceeds
to present evidence after that party has moved for a directed verdict, such party must
reurge the motion for directed verdict at the close of the case, or any error in its denial is
waived. In other words, a party who elects not to stand on its motion for an instructed
verdict, and introduces its own evidence, waives its motion for directed verdict unless it
reurges the motion at the close of the case. Cliffs Drilling Co. v. Burrows, 930 S.W.2d 709,
712 (Tex. App.âHouston [1st Dist.] 1996, no writ); McMeens v. Pease, 878 S.W.2d 185,
190 (Tex. App.âCorpus Christi 1994, writ denied); Bryan v. Dockery, 788 S.W.2d 447, 449
(Tex. App.âHouston [1st Dist.] 1990, no writ). Queen moved for a directed verdict after
Powell's testimony. After the trial court denied his motion, Queen called a witness to testify
on his behalf, but he did not renew his motion for directed verdict at the close of the case. 
Any error in the denial of his motion for a directed verdict was therefore waived. 
Â Â Â Â Â Â Â Â Â Â We affirm the judgment of the trial court.


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Donald R. Ross
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice 

Â Â Â Â Â Â Â Â Â Â Date Submitted:Â Â Â Â Â Â February 5, 2004
Date Decided:Â Â Â Â Â Â Â Â Â February 12, 2004



ntal impairment, no matter the content of the evidence. (5) See Mays, 285
S.W.3d at 886-87.

 During the guilt/innocence phase, the defendant explicitly relied on the court's blanket
exclusion of all mental impairment and diminished capacity evidence, and did not call his anticipated
expert or other witnesses to testify regarding his mental impairment or otherwise enter the substance
of their testimony into the record. (6) Id. at 887-88, 890-91. The defendant explained on the record
that: 

The evidence in this case, were we allowed to present it, would show that because
of mental and medical impairment, the defendant lacked, at the time of the alleged
commissions of this crime, the ability to form the requisites of the mental state
required . . . .


Id. at 886. 

 The Texas Court of Criminal Appeals noted that "this sort of summary, in the most general
and cursory terms, without any of the meat of the actual evidence will not suffice to preserve error."
Id. at 891. In order to preserve the issue for appeal, the defendantwas required to proffer, with some degree of specificity, the substantive evidence he
intended to present, during the guilt phase, of the appellant's mental impairments and
their impact on his mental state at the time of the offense.


Id. at 890. The court held that the defendant failed to preserve error and noted that it is the
proponent's burden to ensure that the substance of the mental impairment evidence was placed into
the record and that the trial court's blanket ruling excluding the evidence did not relieve the defendant
of that burden. Id.

 In this case, in order to rebut or negate mens rea, (7) Rhoten sought to offer expert and lay
witness testimony that she suffered from a mental impairment (mental retardation), and therefore
"lacked the ability to specifically intend to enter into a conspiracy to commit a felony." (8) Outside the
presence or hearing of the jury, the trial court stated that it wanted to hear the proffered mental
impairment testimony from the expert and other witnesses before ruling on its admissibility. 
However, no such testimony or proffer of evidence is reflected in the record. After hearing the
arguments of counsel regarding the admissibility of the mental impairment evidence, the trial court
held that:The Court's ruling at this time is the evidence of diminished capacity or what
[Appellant's attorney] has described as mental retardation, the Court not having
heard the testimony of the expert, evidence of any type diminished capacity or
evidence of any type of mental retardation in the guilt phase of the trial at this time,
the Court is going to rule that under the [Rule 403] balancing test, the Court is going
to find that the probative value of the evidence of mental retardation or diminished
capacity is substantially outweighed by the danger of unfair prejudice, confusion of
the issues, or misleading to the jury.


Therefore, my ruling at this time is that evidence of diminished capacity or mental
retardation is not admissible in the guilt phase of this trial under the Jackson [v.
State,160 S.W.3d 568 (Tex. Crim. App. 2005)] case. 


(Emphasis added.) During the trial, witnesses were questioned in a manner that strayed onto the issue
of mental retardation; the trial court repeatedly noted that it had conducted the Rule 403 balancing
test and that the evidence of mental impairment was inadmissible thereunder. 

 At the conclusion of the evidence, Rhoten stated that

[his expert] was going to talk that he did tests or evaluated my client, that she is
mentally retarded. And I was going to get into the evidence of her mental retardation.
. . . Also I was going to call Dennis Rhoten . . . who's [Rhoten's] father, that she was
in special classes, that she was mentally retarded, and things of that nature. . . . Also
I was going to call Angela Holcomb . . . [s]he is going to testify also that [Rhoten]
is mentally retarded and things of that nature . . . . (9), (10)


Like the defendant in Mays, rather than call her witnesses and have their excluded testimony entered
into the record, Rhoten relied on the trial court's broad ruling excluding all mental impairment or
other diminished capacity evidence. Rhoten's summary statement of the excluded evidence was in
the same general and cursory terms held to be insufficient by Mays. 285 S.W.3d at 891. There is no
evidence in the record of Rhoten's specific mental impairments or their impact on her mental state
at the time of the offense, thereby failing to meet the requirements of Texas Rule of Evidence 103. 
Therefore, Rhoten failed to preserve the issue for our review, and Rhoten's second point of error is
overruled.

IV. Rhoten Pled "Not Guilty"

 In her third point of error, Rhoten contends the judgment should be reformed to reflect her
plea of "not guilty." We agree.

 We have the authority to reform the judgment to make the record speak the truth when the
matter has been called to our attention by any source. French v. State, 830 S.W.2d 607, 609 (Tex.
Crim. App. 1992). Our authority to reform incorrect judgments is not dependent on the request of
any party, nor does it turn on a question of whether a party has or has not objected in trial court; we
may act sua sponte and may have a duty to do so. Asberry v. State, 813 S.W.2d 526, 531 (Tex.
App.--Dallas 1991, pet. ref'd); see French, 830 S.W.2d at 609. The Texas Rules of Appellate
Procedure also provide direct authority for this Court to modify the trial court's judgment. Tex. R.
App. P. 43.2.

 Here, the judgment incorrectly indicates that Rhoten pled "guilty" to the alleged offense. 
However, the record makes clear that Rhoten pled "not guilty" and elected to have her case submitted
to a jury. Accordingly, we reform the judgment to reflect Rhoten's plea of "not guilty" to the offense
charged. As reformed, we affirm the judgment of the trial court. 


 Jack Carter

 Justice


Date Submitted: September 18, 2009

Date Decided: October 16, 2009


Publish
1. Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court
by the Texas Supreme Court pursuant to its docket equalization efforts. See Tex. Gov't Code Ann. 

§ 73.001 (Vernon 2005). We are unaware of any conflict between precedent of the Twelfth Court
of Appeals and that of this Court on any relevant issue. See Tex. R. App. P. 41.3.
2. Rhoten contends the indictment is defective, in that it is "on its face, legally insufficient
[because] the overt act must be something more than simply making an agreement." We note that
Rhoten failed to file a motion to quash or otherwise object to the indictment at trial, and therefore,
failed to preserve error with regard to any defects in the indictment. See Tex. Code Crim. Proc.
Ann. art. 1.14(b) (Vernon 2005). 
3. These notes and letters are from a "Megan." Matthews testified, without objection, that
"Megan" is, in fact, Rhoten. 
4. The defendant offered the slides as exhibits, and the court admitted them for the record.
5. The trial court "also excluded the evidence because of prejudice, irrelevance, and confusion
to the jury." Mays, 285 S.W.3d at 887. We note the defendant's question of "how could we know
if that evidence would be more prejudicial than probative when we haven't even had a chance to see
what that evidence is." Id. at 891.
6. The trial court agreed with the defendant that calling his expert and other witnesses to testify
regarding mental impairment was unnecessary because of its broad ruling excluding all such
evidence. See Mays, 285 S.W.3d at 891.
7. Rhoten was held to be competent for trial. 
8. The incapacity to form a requisite criminal intent due to mental disease or defect is
"insanity." Thomas v. State, 886 S.W.2d 388 (Tex. App.--Houston [1st Dist.] 1994, pet. ref'd). 
Insanity is the only "diminished capacity" defense to criminal responsibility in Texas. Jackson, 160
S.W.3d at 573. "Texas does not recognize diminished capacity as an affirmative defense, i.e., a
lesser form of the defense of insanity." Id. at 573. 

 Here, at trial, without objection from Rhoten, the State and the trial court referred to the
purpose of the evidence as "diminished capacity." Rhoten did not explicitly state the purpose of the
evidence at trial; however, it is apparent from the record that she sought to introduce the evidence
to rebut or negate mens rea. 
9. In a bill of exception, Matthews testified that Rhoten's father told him she was mildly
retarded and that he and the other officers investigating this case were informed that Rhoten was
mentally retarded. 
10. Rhoten's proffered expert conducted Rhoten's competency evaluation and concluded that
Rhoten was mildly retarded but competent to stand trial and was fully aware that her conduct was
wrong.